UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:04-CR-211-1BO

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | **GOVERNMENT'S RESPONSE** |
| v. ) | **TO DEFENDANT'S MOTION IN** |
| ) | **LIMINE TO EXCLUDE EVIDENCE OF** |
| DAVID A. PASSARO ) | **OTHER CRIMES, WRONGS, OR ACTS** |

The United States of America, by and through the United States Attorney for the Eastern District of North Carolina, does not oppose Defendant's Motion *in limine* to exclude evidence of the defendant's 1990 State of Connecticut conviction for Breach of Peace.

In 1990, the Defendant was involved in a brutal assault in Hartford, Connecticut. After the incident, the Defendant engaged in what can only be termed a pattern of behavior which was intended to obstruct and thwart any further investigation of the matter. This included the fabrication of testimony, creation of witnesses and witness tampering. As a result, the Defendant was questioned, arrested and charged with several violations of law which included at least one felony. The Defendant eventually plead guilty to Breach of Peace, a misdemeanor, and was dismissed from his employment as a Police Officer for the City of Hartford (See attachment Magistrate Judge Webb Detention Hearing Tr. at 34-35, 64-68, 188).

The Federal Rules of Evidence, through Rule 404(b), have contemplated the introduction of prior acts evidence by requiring the prosecution, upon request by the accused, to provide reasonable notice of the use of 404(b) evidence in advance of trial, or during trial if the court excuses pretrial notice on good cause shown. <u>The government has not provided such notice at this time</u> and does not intend to introduce any evidence of the defendant's 1990 misdemeanor conviction under Rule 404(b). However, it reserves the right to use such evidence where it would otherwise be permissible, such as for purposes of impeachment under Fed. R. Evid. 608(b).

Respectfully submitted this 17th day of November, 2004.

FRANK W. WHITNEY
United States Attorney

BY: JAMES A. CANDELMO
Assistant United States Attorney
Criminal Division

CERTIFICATE OF SERVICE

This is to certify that I have this 19th day of November, 2004, served a copy of the foregoing upon the defendant in this action via courier as follows:

THOMAS MCNAMARA
Federal Public Defender
Raleigh, North Carolina

_____
JAMES A. CANDELMO
Assistant United States Attorney
Criminal Division

1        A    No, sir.

2        Q    You were not aware of that?

3        A    No, sir.

4        Q    Okay. Did he ever tell you that he was found
5   guilty in Hartford, Connecticut in 1990?

6        A    No, sir.

7        Q    Did he ever tell you that at that point in time,
8   according to the Hartford Police Department---

9             Mr. DuBois:         (interposing) Objection, Your
10  Honor, relevance. He has already stated he doesn't know
11  anything about this.

12            The Court:         I'm going to allow the
13  question.

14            Mr. Candelmo:      Thank you, Your Honor.

15            By Mr. Candelmo:

16       Q    According to the Hartford Police Department, the
17  defendant and a friend, Edward Novak--do you know Edward
18  Novak?

19       A    No, sir.

20       Q    Okay. Are you familiar that they---

21            Mr. DuBois:         (interposing) Objection, Your
22  Honor. Can we just get a time frame for this?

23            The Court:         That's fair, Mr. Candelmo, if
24  you would put it in a time frame.

25            Mr. Candelmo:      Certainly, Your Honor.

```
 1              By Mr. Candelmo:
 2        Q     1990, October 10th particularly in---
 3        A     (interposing)  Sir, I wouldn't know anything about
 4  Dave Passaro's life that would have gone back past the last
 5  four years.  We didn't talk about things we've done in the
 6  past.
 7        Q     So you wouldn't know that if he told a story to
 8  the Hartford Police Department---
 9              Mr. DuBois:        (interposing) Objection, Your
10  Honor.  He has answered the question.
11              The Court:         I believe that's true, Mr.
12  Candelmo.  I'll sustain the objection.
13              Mr. Candelmo:      All right.
14              By Mr. Candelmo:
15        Q     Mr. Passaro has never told you about changing his
16  story to the authorities?
17              Mr. DuBois:        Objection, Your Honor; asked
18  and answered.
19              The Court:         Mr. Candelmo, he has testified
20  that he would not have known and did not know anything about
21  the defendant's life prior to the four years that he has
22  known him.  Move on.
23              Mr. Candelmo:      Your Honor, if I may, he has
24  also testified on direct examination about Mr. Passaro
25  telling him all about his military career that was prior to
```

1  today?

2    A    No, sir.

3    Q    Were you living in Hartford, Connecticut in 1990?

4    A    I've never lived in Hartford, Connecticut, sir.

5    Q    Where do you reside?

6    A    I live in East Hartford.

7    Q    How close is that?

8    A    As the crow flies, it's a few miles.

9    Q    A few miles?

10   A    Uh-huh.

11   Q    Are you aware that your brother Dave worked for--
12 worked on the police department in Hartford, Connecticut in
13 1990?

14   A    Yes, I was aware.

15   Q    How were you aware of that?

16   A    David and I had discussed many times and even
17 taken some police examination tests together to perhaps be
18 able to be on a police force. So when he passed his, it was
19 a great--it was a great day.

20   Q    What police department did he become employed by?

21   A    The Hartford Police Department.

22   Q    Was that in 1990?

23   A    I believe so, yes, sir.

24   Q    Were you aware that he was a policeman there for
25 less than a year?

1     A    I don't know the exact number of months, but yes,
2 I know he was there and he was a police officer.
3     Q    Do you know that he left the police force because
4 he had been arrested after being engaged in a brawl with
5 someone?
6     A    As I understand it, sir, it was a violation of the
7 standard probation period that, you know, he--the department
8 needed to follow through with it as a result of the incident.
9     Q    What did you understand his violation of the
10 probation period was?
11    A    Well, that there had been an altercation and that
12 was a violation of the standard probation period.
13    Q    Did you understand that he had beaten up somebody
14 pretty severely?
15    A    I understood that in the altercation the man that
16 assaulted David did get hurt and--but that the same person
17 also petitioned to the judge asking that the charges be
18 dropped, admitting his guilt and that he had initiated that
19 confrontation.
20    Q    You say that this man assaulted David?
21    A    That's correct.
22    Q    Do you know why then he was charged with the
23 criminal--why David was charged with a criminal offense if he
24 was the one who was the victim?
25    A    Well, I guess David--the other person maybe got

**KAY McGOVERN & ASSOCIATES**         (919) 870-1600
Suite 117, 314 West Millbrook Road         FAX 870-1603
Raleigh, North Carolina 27609-4380         (800) 255-7886

1 the worst of it, you know.

2     Q    Did David tell you that he was the victim of an
3 assault?

4     A    I was aware of how the altercation started and
5 what the outcome of it was, yes.

6     Q    My question was did David tell you that he had
7 been the victim of an assault?

8     A    Yes.

9     Q    Do you know if he told the police department that
10 he had been the victim?

11     A    I do not know what the records would show on this
12 in Hartford, you know, the court proceedings or anything like
13 that.

14     Q    Do you know why the police department would fire
15 him if he had actually been the victim of the assault rather
16 than the assaulter?

17     A    Well, David was involved in it, sir. My
18 understanding, again, is that David was in a probationary
19 period of the police department. And having been involved in
20 that particular incident, it evidently was a violation of
21 that standard probation period. But again, like I say, the
22 person involved, you know, petitioned the court to drop it,
23 admitting the guilt. And I believe it was reduced to nothing
24 more than a $100 fine.

25     Q    Well, didn't your brother plead guilty to a

**KAY McGOVERN & ASSOCIATES**  
Suite 117, 314 West Millbrook Road  
Raleigh, North Carolina 27609-4380  

(919) 870-1600  
FAX 870-1603  
(800) 255-7886

1  misdemeanor charge of breach of the peace?
2       A    I believe a breach of the peace, yes.
3       Q    And then he was fired by the police department?
4       A    I believe as a result of the violation of the
5  parole--the probation period, yes.
6       Q    Do you have any awareness of your brother, Mr.
7  Passaro, David Passaro, asking anyone to lie on his behalf
8  that he had been the victim rather than the perpetrator?
9       A    I have no information on that.
10      Q    Did he ever ask you to say or claim that he had
11 been the victim rather than the perpetrator?
12      A    Never, sir.
13      Q    Do you know if he asked anyone to do that on his
14 behalf?
15      A    I was not asked and I cannot speak for anybody
16 else. No one ever approached me, you know, and discussed if
17 that had ever been done. So I would have to say no.
18      Q    Did you ever talk to his then wife Kerry about
19 this incident?
20      A    No, sir.
21           (Pause.)
22      Q    Wasn't his then wife Kerry involved in this
23 particular event?
24      A    By marriage or---
25      Q    (interposing) No, being present and observing.

1  A   That I do not know, sir.

2  Q   Did you have any understanding that Mr. Passaro
3  threatened the other person--that is, the person you say
4  assaulted him, threatened him that if he told the police, he
5  would beat him again?

6  A   I have no information on that.

7  Q   You never heard that before?

8  A   No, sir.

9  Q   Have you ever examined any of the police depart-
10 ment reports about this event?

11 A   No, I have not.

12 Q   Have you ever talked to any of the policeman who
13 investigated the event?

14 A   I have not.

15 Q   The only person you've talked to, then, about this
16 apparently is your brother?

17 A   Well, that would be accurate, yes.

18 Q   You told us that he has a son named Anthony. How
19 old is his son?

20 A   3 years old.

21 Q   Is the son, Anthony, in the custody of his mother
22 at the present time?

23 A   That's my understanding, sir.

24 Q   Your brother has had two marriages?

25 A   Yes, sir.

1 allows this court to believe that this individual is capable
2 of influencing or trying to improperly influence testimony.
3 The tapes that you heard, Your Honor, also talks about---
4     The Court:     (interposing) No, I understand
5 how I should take that evidence. But what I'm asking is--
6 you've have alleged that he constitutes a danger to the
7 community. And two things have been cited in support of
8 that, the first that he in 1990 although pleading guilty only
9 to a misdemeanor breach of the peace, that the crime involved
10 a vicious assault. Some 13 years later he is charged with
11 aggravated assault that he stands before us for.
12     And my question is simply is that the danger you
13 perceive, that if he is released that he would assault
14 someone. With regards to the tampering pf a witness and
15 everything, those are all covered in the statute under
16 separate bases. I'm trying to focus in narrowly on what you
17 believe the danger to the community to be.
18     Mr. Candelmo:     Your Honor, yes, to assault
19 someone. And we also have heard evidence today, in
20 particular with regards to his estranged wife. And Detective
21 Heart talked about how much bad blood is between these two,
22 and that she may be responsible in some way or form for not
23 testifying here today.
24     The Court:     I think I understand your
25 argument. Thank you. Mr. McNamara.