UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:04-CR-211-1-1BO

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | GOVERNMENT'S RESPONSE TO MOTION |
| v. ) | TO COMPEL DISCOVERY AND |
| ) | MOTION FOR COMPULSORY PROCESS |
| DAVID ANTHONY PASSARO ) | (UNDER SEAL) |

The United States of America, by and through the United States Attorney for the Eastern District of North Carolina, hereby responds in opposition to the defendant's Motion to Compel Discovery and Motion for Compulsory Process and, in support of such opposition, shows unto the Court the following:

FACTUAL/PROCEDURAL BACKGROUND

On June 17, 2004, a grand a jury of this District returned a four count indictment charging the defendant with two counts of assault with a dangerous weapon, in violation of 18 U.S.C. § 113(a)(3); and two counts of assault resulting in serious bodily injury, in violation of 18 U.S.C. § 113(a)(6).[1] All of the counts alleged that the offenses were committed by a United States national and occurred within the "special maritime and territorial jurisdiction of the United States, within the meaning of 18 U.S.C. § 7(9), namely, "at a United States Army base near the town of Asadabad, in Kunar Province, Afghanistan."

---

[1] The counts were predicated upon the defendant's alleged activities on June 19, 2003 and June 20, 2003.

1



The defendant, a former member of the U.S. Army, was an independent contractor working on behalf of the Central Intelligence Agency (CIA) to engage in paramilitary activities in support of United States military personnel in Kunar Province, in the nation of Afghanistan. On June 18, 2003, the defendant was contracted to be at a U.S. Army base near the town of Asadabad, Afghanistan, a location approximately five miles from the Pakastani border. The compound was employed by U.S. personnel as a base from which to launch missions against terrorists, gather intelligence, and train fledgling Afghani military forces to assume responsibility for their own defense. During the months preceding June 19, 2003, it was the target of sporadic rocket attacks by hostile paramilitary forces.

The indictment also alleges (and the government anticipates proving at trial), that on June 19, 2003, Abdul Wali, a local Afghani national, voluntarily surrendered himself at the front gate of Asadabad base. It should be noted that the common Arabic name, Abdul Wali, was provided to United States forces as a person of interest regarding the rocket attacks. Between June 19 and June 20, 2003, the defendant interrogated Wali at the Asadabad Army base concerning the attacks. During the interrogations, the defendant is alleged to have beaten Wali with his hands, his feet and a large flashlight. Wali died in a cell on Asadabad Base on June 21, 2003.

The defendant has made previous discovery demands and the

Government has already provided a quantity of material to him as a result. The production thus far has already included much of the Government's likely evidence-in-chief. The defendant's discovery demands, as well as the Government's independent Brady obligations have triggered an extensive effort to collect and review documents not under the control of the USAO EDNC. As a result, a quantity of documents have been identified that may be responsive and are undergoing review by the controlling agency for release to the defendant.

ARGUMENT

Motion for Compulsory Process

The defendant asks that the Court order compulsory process of "the name, current locations, business addresses, and telephone numbers of anyone who was present in Asadabad, Afghanistan during the detention and questioning of Abdul Wahli on June 19 and 20, 2003, and anyone whose responsibilities required any such person to take action as a result of the same." He goes on to expressly assert that in this case his compulsory process right is triggered by the simple fact that the Government declines to call an individual as a witness because "that person did not see any mistreatment of the victim by Mr. Passaro." He expands even this to contend that the defendant "should have the right to compulsory process of such a witness for the very reason that the government would choose not to call him or her." (Defendant Motion at 2)

3

The Government commits, absent extraordinary security concerns which would then be presented to the Court *In Camera*, that it will voluntarily produce the name of any witness known to us who observed the defendant and victim Wali together. However, the defendant's contention is at its core specious. Absent some legitimate showing of relevance and materiality, he has no compulsory process rights. The Government cannot be made to embark on an absurd mining of data banks to identify every witness who didn't see or hear anything regarding the defendant's beating of victim Wali.

In <u>United States v. Moussaoui</u>, 365 F.3d 292, 307 (4th Cir. 2004) the defendant raised a similar claim noting that he did not have any direct access to the witnesses he desired to examine. The Court found that "[t]he compulsory process right does not attach to any witness the defendant wishes to call, ... a defendant must demonstrate that the witness he desires to have produced would terstify 'in his favor'." Id. The Court must determine whether the witness could provide testimony material to the defendant's defense. Id. The Court did find that the defendant's lack of direct access alter the equation to the extent that the defendant "cannot be required to show materiality with the degree of specificity that applies in the ordinary case." <u>Moussaoui</u> at 308. However, the defendant is still required to make a 'plausible showing' of materiality. <u>Moussaoui</u> at 308. See also <u>United States</u>

v. Valenzuela-Benal, 458 U.S. 858, 870-71 (1982)(defendant who had no access to witnesses who had been deported required to provide some plausible explanation of the assistance he would have received from the testimony of the deported witnesses). It should also be noted that the Moussaoui decision required the defendant to make such a materiality showing individually as to each witness requested. Id. at 308.

The somewhat novel circumstances of the assault charges at issue here i.e. that the alleged criminal conduct took place overseas, does not change the reality that the requirement for the defendant to make a showing of materiality before invoking a claim to compulsory process is well established. See: United States v. Sellers, 520 F.2d 1281, 1285 (4th Cir. 1975); Cook v. Bounds, 518 F.2d 779, 780 (4th Cir. 1975); United States v. Bennett, 675 F.2d 596, 598 (4th Cir. 1982).

In his motion, the defendant gives lip service to the principal that he bears the burden of showing materiality in order to trigger the right to compulsory process. However, he promptly turns from this concession to the assertion that the mere fact that the Government does not plan to call as a witness an individual who didn't make relevant observations establishes that individual's materiality to the defendant's case. This is wholly inconsistent with the logic and policy considerations underlying the materiality requirement.

Reduced to its core, the defendant's Motion for Compulsory Process might well be viewed as a demand for Brady material. His failure to style it in this manner may not have been accidental. Not only does a failure to observe relevant information fall well short of the Brady standard but the Supreme Court has expressly found that the Brady doctrine did not create a general constitutional right to discovery in a criminal case. Weatherford v. Bursey, 429 U.S. 545, 559 (1977). *Accord* United States v. Polowicak, 783 F.2d 410, 414 (4th Cir. 1986).

Motion to Compel Discovery

In addition to a 12 item list of specific requests the defendant makes a general demand for Brady information, the Government's witness list and for the early disclosure of Jencks material.

As noted above, the Government has already produced an extensive quantity of material containing much of its case-in-chief. Additionally, the Government has committed herein, absent exigent circumstances of a nature to trigger a request for *In Camera* review, to produce the name of all witnesses known to it who had observation of the defendant with victim Wali. Such an undertaking clearly exceeds the scope of all statutory or case-generated discovery rights. The Government has also caused a search of files and a detailed review of a large quantity of

material not within the control of the USAO EDNC in an effort to identify any and all documentation possibly responsive to defendant's earlier discovery demands. Not satisfied with this, the defendant unabashedly demands that to which he has no right.

The defendant's motion for the early production of all <u>Jencks</u> material essentially asks this Court to violate clear Fourth Circuit precedent. In <u>United States v. Lewis</u>, 35 F.3d 148, 151 (4th Cir. 1994), the Court expressly found that "[t]he district court may not require the government to produce Jencks Act material relating to one of its witnesses until after the witness has testified." It would seem that the defense bar ought not, as a matter of course, be asking the trial courts to violate this ruling. The motion is opposed.

Witness List

The Government has gone well beyond any normal discovery obligation and taken the extraordinary step of providing the defendant with a with a likely witness list. However, it should be noted that the defendant's more recent Notice that he intends to raise a defense of public authority makes it likely the actual list of witnesses will expand. The Government maintains that it has no obligation to provide the defendant with a running roster of whom it believes it may call. The Government's effort to go above and beyond its obligations should not be viewed as a concession that

the defendant's demands are well founded. To the contrary, the defendant's demand for the Government's witness list is distinctly lacking in legal underpinning.

Absent a special showing of need, the Government has no duty to provide names or addresses of its witnesses. <u>United States v. Smith, 780 F.2d 1102, 1107-10</u> (4th Cir. 1985); <u>United States v. Anderson</u>, 481 F.2d 685 (4th Cir. 1973), *aff'd*, 417 U.S. 211 (1974). Whether the defendant has made such a special showing as to impose such a requirement is left to the sound discretion of the trial judge. <u>United States v. Fletcher</u>, 74 F.3d 49, 54 (4th Cir. 1996). Under the circumstances of the case at hand, wherein the defendant has already been provided with discovery containing much of the Government's case-in-chief, extensive efforts are being made to determine if any additional material responsive to his demands exists and the facts underlining the charges themselves (as distinguished from their sensitive setting in a theater of war) lack complexity, there is no justification for such an order.

<u>Brady</u>

As to the defendant's <u>Brady</u> demand, the Government is well aware of its <u>Brady</u> obligations and has every intention of fulfilling them. The Government has never contended that the requirement for CIPA procedure alters the <u>Brady</u> or general discovery standard. In part towards the end of being certain that

8

there is no outstanding Brady material, the Government has undertaken an extensive file review which is on-going. Contrary to the defendant's assertion, the Government has not refused further discovery production. Rather, the Government has undertaken a rather laborious process of trying to ascertain if there is additional responsive material and to clear this material in a manner consistent with national security. If the defendant believes he is entitled to some specific material which he can in good faith identify as Brady material, he should request this with specificity. Blanket demands for the names of everyone who saw and heard nothing of relevance does not qualify.

The defendant's request for the name of every person present at Asadabad, expressly including those whom the Government has no intention of calling at trial, is outside the scope of a legitimate discovery request. The normal course of investigations frequently involve interviews of people who simply didn't see or remember anything of significance. It is not uncommon for there to be no recording of such fruitless encounters and thus nothing for the Government to produce. It was never the intention of the Federal Rules of Criminal Procedure to require the Government to conduct a search for meaningless information. Furthermore, while the necessity for CIPA procedure does not lessen the Government's Brady and general discovery obligations, neither does it expand them as the defendant seems to contend.

Similarly, although the claim that the defendant may have been hindered in discussions with counsel because of delay in getting security clearances for his counsel may well be a basis for a request for a continuance, it does not magically breath legitimacy into unjustifiable discovery demands.

Asadabad was populated with personnel from a number of Governmental entities. To the best of the undersigned's knowledge, there is no list of names such as the defendant requests. While efforts were made to identify those having relevant knowledge, directing the Government to scour various agencies' records to try to create such a list of individuals without relevant knowledge would require it to expend valuable resources on what can only be viewed as an exercise in the absurd. This is precisely the sort of groundless fishing expedition the Federal Rules of Criminal Procedure were designed to prevent.

SERE Training Material

The defendant's demand for production of SERE training material, in addition to being so ill-defined as to be as a practical matter nearly indecipherable, is groundless. There is no reasonable basis to contend that the sort of assault with which the defendant is charged, including brutal booted kicking of the victim is justified by this or any other training program. The Court need not go any further than the understanding of the acronym Survival,

Evasion, Resistance and Escape. This is not a DOD interrogation program and is therefore irrelevant to the pending assault charges. While the nature of SERE training might well be admissible should the Government choose to offer it in rebuttal to some specious claim mounted by the defendant, there is no legitimate basis to require its production pre-trial.

In assessing the validity of the defendant's various demands, it is perhaps useful to note that despite the unusual setting of this assault case, the fundamental parameters of law regarding discovery still apply. Even the <u>Brady</u> doctrine does not require open-file discovery. <u>See</u> <u>Kyles v. Whitley</u>, 514 US 419, 437 (1995). More generally to the point, the law does not require the Government to disclose neutral, irrelevant, speculative or inculpatory evidence. <u>See</u> <u>Wood v. Bartholomew</u>, 516 U.S. 1,8 (1995). Even in the context of a case involving classified information, it is still the defendant's burden to show the materiality of the discovery material he seeks. <u>Moussaoui</u> at 308. He has utterly failed to carry this burden. The Government has voluntarily assumed an obligation to produce everything of true relevance to this case. However, it opposes being sent on wasteful fishing expeditions well outside the parameters of lawful discovery.

In addition to his general demands the defendant presses some 12 specific demands which the Government will answer following the

defendant's enumeration:

1-4. All correspondence between governmental entities related to the issues at hand which the undersigned have been able to identify is undergoing a process of review and clearance for dissemination to the defendant.

6-7. All photographic, video or audio recordings relevant to the issues in this case of which the undersigned are aware have already been produced.

8. See Government's position re: SERE training.

9. To the extent that this report, recently acquired by the undersigned, encompasses Jencks, Brady or Giglio material it will be produced. However, it must be born in mind that there "is no constitutional requirement that the prosecution make a complete and detailed accounting to the defense of all police investigatory work on a case." Moore v. Illinois, 408 U.S. 786, 795 (1972).

10. To the extent the defendant is actually requesting Jencks material, this demand has been answered above. However, it should be noted that a party seeking disclosure of Grand Jury material has the burden of showing a "particularized need". See e.g. United States v. Sells Engineering, Inc., 463 U.S. 418, 443 (1983); United States v. Silva, 745 F.2d 840, 845 (4th Cir. 1984). The Government believes that there is no basis to demand an early production in the context of the case at hand.

11. Criminal histories Government witnesses will be provided

as Giglio material. There is no basis for the general production of a given witness' entire personnel file. This demand is refused as beyond the scope of legitimate discovery.

12. To the extent that this material constitutes Jencks, Brady or Giglio material it will be produced. Absent this, see response to item 9.

In the event the Government has failed to respond to any demand by the defendant, it should be deemed denied and the Government requests an opportunity to present further argument.

Respectfully submitted this 26th day of January, 2005.

FRANK W. WHITNEY
United States Attorney

BY: JOHN S. BOWLER
Assistant United States Attorney
Criminal Division

CERTIFICATE OF SERVICE

This is to certify that I have this 26TH day of January, 2004, served a copy of the foregoing **GOVERNMENT'S RESPONSE TO MOTION TO COMPEL DISCOVERY AND MOTION FOR COMPULSORY PROCESS** defendant in this action by hand delivery to the CSO who in turn will provide a copy to:

THOMAS MCNAMARA
Federal Public Defender
Raleigh, North Carolina

JOHN S. BOWLER
Assistant United States Attorney
Criminal Division