IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA



NO: 5:04-C4-211-1

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | MEMORANDUM IN SUPPORT |
| v. | ) | OF MOTION FOR LEAVE TO |
| | ) | INTERVENE AND FOR ACCESS TO |
| DAVID A. PASSARO | ) | TO PORTIONS OF THE RECORD |

*People in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing.*

Richmond Newspapers Inc. v. Virginia, 448 U.S. 555 (1980) (Burger, C.J.). *See also*, Craig v. Harney, 331 U.S. 367, 374 (1947) ("A trial is a public event. What transpires in the court room is public property."). As Justice Holmes wrote while sitting on the Supreme Judicial Court of Massachusetts, "Every citizen should be able to satisfy himself with his own eyes as to the mode in which a public duty is performed." Cowley v. Pulsifer, 137 Mass. 392 (1884) (Holmes, J.)

At issue in this case is the right of the public and of the press to exercise their constitutionally protected interest to inspect judicial records and attend judicial proceedings.[1] The records and proceedings before the court in this matter are of heightened concern to the public. This case represents the first criminal prosecution of an independent contractor of the United States government based on allegations of detainee abuse. Despite the enormous public interest in this prosecution, most of the record is currently under seal.

## I. BACKGROUND AND PROCEEDINGS TO DATE

The defendant, David A. Passaro, is the first civilian to be indicted in connection with abuse of detainees in Afghanistan or Iraq, and all eyes are on this case to see and evaluate how America is dealing with the matter. Indeed, Attorney General John Ashcroft himself announced

---

[1] To the knowledge of intervenors, no proceedings have been closed to date, but the Protective Order entered in this case purports to apply to documents and proceedings equally.

IC:Boyce

99

at a press conference that "the United States will not tolerate acts of brutality and violence against detainees such as those alleged in this indictment."[2]

From its inception through last week, this case has garnered attention locally, nationally and globally. *The News & Observer* alone has published approximately 26 articles about it. The issue arising out of the government's treatment of detainees – and this case in particular -- have been covered by newspapers from coast to coast[3] and continent to continent[4] and on broadcast media.[5] Information about the matter is even posted on the website for the U.S. Embassy in Japan.[6]

Mr. Passaro was a contractor working on behalf of the United States Central Intelligence Agency ("CIA") at a military base near Asadabad in Afghanistan. On June 18, 2003, an Afghani man named Abdul Wali surrendered at the Asadabad Base. Over the next two days, Passaro

---

[2] Terry Frieden. "U.S. Indicts CIA Contractor in Afghan Prison Death," CNN Washington Bureau, 22 June 2004.
[3] A database search reveals 229 newspaper articles discussing the defendant in some fashion. A sample of the stateside articles include "CIA Says Approved Methods of Questioning Are All Legal," *The New York Times*, March 19, 2005; "CIA director defends interrogations," *Houston Chronicle*, March 18, 2005; "CIA director defends US interrogation practices," Associated Press Newswires, March 17, 2005; "Contractors pay unsung toll in Iraq," *Chicago Tribune*, February 22, 2005; "Ex-CIA Contractor says he is scapegoat after scandal," *Orlando Sentinel*, February 21, 2005; "Former CIA contractor says he's a scapegoat," *St. Petersburg Times*, February 21, 2005; "US distances self from vigilante," *Christian Science Monitor*, July 12, 2004; "Keep the bad apples out of military units," *Greensboro News & Record*, July 6, 2004; "Pentagon Alerted to Trouble in Ranks," *Los Angeles Times*, July 1, 2004; "Memo lists acceptable 'aggressive' interrogation methods; Justice Dept. gave guidance to CIA," *USA Today*, June 28, 2004; "Afghan official undermines American's abuse defense," *Chicago Sun-Times*, June 20, 2004; "Civilian faces charges in death of prisoner," (Austin) *American-Statesman*, June 18, 2004; "Civilian charged in death of prisoner," *The Atlanta Journal-Constitution*, June 18, 2004; "Contract worker indicted over death of detainee," *Financial Times*, June 18, 2004.
[4] The international press has reported this case, as well. "26 detainee deaths may be criminal homicides," *International Herald Tribune*, March 27, 2005; "The bad bounty hunters of Kabul," *New Zealand Herald*, July 12, 2004; "U.S. soldiers charged with manslaughter," *Ottawa Citizen*, July 3, 2004; "Detainee died after CIA 'bashing,'" *Sunday Telegraph*, June 27, 2004; "Soldiers to testify CIA contractor kicked, beat Afghan detainee with flashlight," *The Canadian Press*, Jun 25, 2004; "Prison abuse charge laid," *Geelong Advertiser*, June 19, 2004; "CIA worker faces abuse charges," (Liverpool) *Daily Post*, June 18, 2004; "CIA contractor charged for beating Afghan prisoner to death," Xinhua News Agency, June 17, 2004.
[5] "CIA agents 'do not use torture'," BBC News, World Edition, March 18, 2005; "An Afghan prison stirs doubts on CIA," Afghan News Network, March 7, 2005; CIA secrecy at issue in beating case, CNN, July 21, 2004;. "CIA contractor David Passaro charged with beating Afghan detainee to death during interrogation last year," NBC Nightly News, June 17, 2004.
[6] CIA Contractor Indicted for Abuse of Afghan Detainee, website for US Embassy in Japan, http://tokyo.usembassy.gov/e/p/tp-20040618-17.html.

2

participated in Wali's interrogation. An indictment filed by the United States alleges that during

that interrogation, Passaro used his hands, feet and a large flashlight to beat Wali. A day after

the interrogation, Wali died. The United States alleges that Passaro did wilfully, knowingly, and

intentionally assault Wali with a dangerous weapon with the intent to do him bodily harm.

Passaro was indicted on the assault charges on June 17, 2004, and subsequently was arrested.

Numerous pleadings in this case are under seal by virtue of a protective order entered by

the court. In addition, the court has granted two separate motions to seal filed by the defendant.

## A.   <u>The Protective Order</u>

On June 24, 2004, the United States moved for entry of a protective order pursuant to the

Classified Information Procedures Act ("CIPA"), the statute that establishes pre-trial, trial and

appellate procedures for federal criminal cases that hold the potential for release of classified

information. 18 U.S.C. app. 3 § 1, *et seq.* (2000). The Court conducted a hearing on that motion

on July 21, 2004. On August 2, 2004, the court entered a protective order setting forth the

procedures to be employed by parties to the case "to prevent the unauthorized disclosure or

dissemination of classified national security information and documents." Protective Order p. 1.

The Protective Order provides a specific procedure for handling pleadings containing classified

information that begins as follows:

> All written pleadings, filings, attachments, or documents involving classified
> information, or those which reasonably might cause the disclosure of classified
> information, or which concern or relate to national security or intelligence matters
> (including but not limited to any subject referring or relating to the Central
> Intelligence Agency, National Security Agency, Defense Intelligence Agency,
> Department of State, National Security Counsel, Federal Bureau of Investigation
> or similar entity, or information in the possession of such entity), shall not be
> publicly filed, but shall be filed under seal to the CSO and shall be marked:
> "Filed in Camera and Under Seal with the Court Security Officer.

Protective Order ¶ 20.[7]  The CSO is then charged, with the assistance of the relevant

governmental agencies, with determining whether any of the submitted material is classified, and

if so, classified at what level.  "Portions of the pleadings or documents that do not contain

classified information shall be unsealed by the CSO and placed in the public record."  Id.

**B.      The Sealing Orders**

In addition to the Protective Order, the Court has entered two sealing orders.  Because the

motions to seal are themselves sealed, it is virtually impossible to discern their content or

meaning.[8]  Docket entry number 64 is listed on the court's docket sheet as "MOTION by USA as

to David A. Passaro to seal."  The court's order granting that motion lends no more information:

> Upon motion of the United States and for good cause shown, it is hereby
> ORDERED that the Motion to Extend Motion Response Time in the above-
> referenced matter, and the instant Motion to Seal, be sealed by the Clerk from this
> date until further order by this Court, except that a certified copy of the same be
> provided to the United States Attorney's Office.

It appears there is a document – Docket number 65 – that is not even listed on the docket sheet.

Docket number 66 purports to be a "MEMORANDUM by David A. Passaro in support of

motion to dismiss indictment as unconstitutional infringement [65-1] motion SEALED

MOTION," but there is no listing whatsoever for Docket number 65.

Docket number 73, which also is not publicly available, is described on the docket sheet

as "MOTION by USA as to David A. Passaro to seal govt's response to Deft's notice of intent to

assert public authority defense and request for witness information."  The order granting that

motion states:

---

[7]The Protective Order designates individuals as Court Security Officers who are responsible for the security
arrangements, ¶ 4, and defines classified information.  ¶ 9.

[8] Docket Numbers 64 and 73 are not listed on the docket sheet as being sealed, but a request to the clerk of court
resulted in a denial of access.

Upon motion of the United States and for good cause shown, it is hereby ORDERED that the Government's Response to Defendant's Notice of Intent to Assert Public Authority Defense and Request for Witness Information in the above-referenced matter, and the instant Motion to Seal, be sealed by the Clerk from this date until further order by this Court, except that a certified copy of the same be provided to the United States Attorney's Office and counsel for the defendant.

As of this filing, 23 documents remain under seal in their entirety. Attached as Exhibit A to this memorandum is a chart of the documents under seal.

## II.    ARGUMENT

As demonstrated by this memorandum, the Court should unseal all information that has been deemed unclassified by federal intelligence agencies. Keeping unclassified documents under seal denies the people of North Carolina – and the United States -- their right to inform themselves about the proceedings in this important case, in violation of rights presumptively afforded to them by the First Amendment to the Constitution of the United States.

### A.    Numerous Records Are Being Maintained Completely Under Seal in Violation of The Protective Order

The Classified Information Procedures Act governs the treatment of classified information that has a potential to damage national security were it to be released. The law eliminates the potential for "graymailing" by criminal defendants who threaten to disclose classified information by, among other things, requiring defense counsel to put the prosecution and the court on notice when the defense intends or desires to use classified information. CIPA addresses only the treatment of classified information; it is not a blanket statute authorizing the sealing of all records, even in a case with significant national security implications.

In this case, the court has entered a Protective Order that calls for the release of all information that is not classified.

> If the CSO determines that the pleading or document contains classified information, the CSO shall insure that the portion of the document, <u>and only that portion</u>, is marked with the appropriate classification marking and remains temporarily sealed. <u>Portions of the pleadings or documents that do not contain classified information shall be unsealed by the CSO and placed in the public record.</u>

Protective Order, ¶ 20 (emphasis supplied). This has not happened. There are only two specific sealing orders (discussed below). The rest of the sealed documents are presumably being maintained in secret pursuant to the Protective Order. The CSO apparently has complied with some requirements of the Protective Order in sending potentially classified documents to the authenticating agencies for classification or designation as not classified, but upon information and belief the court is not placing in the public file all documents or portions of documents that have been designated not classified. Rather, documents that originally are submitted under seal pursuant to the Protective Order are remaining under seal. Absent specific findings that the presumptive First Amendment right of access is overcome, the Court should immediately unseal all declassified information contained in these court documents that is not classified.

In addition to violating the protective order, continued closure abrogates the court's obligations to independently evaluate the need for confidentiality in any documents not classified by United States intelligence agencies. The Fourth Circuit has squarely addressed the court's role regarding public access to court records in the context of criminal cases with national security concerns, the first time in 1986 and the second in 2003. <u>In re Washington Post Co.</u>, 807 F.2d 383 (1986); <u>U.S. v. Moussaoui</u>, 65 Fed. Appx. 881, 2003 WL 21076836 (4th Cir. 2003). <u>In re Washington Post</u> involved the prosecution of Michael A. Soussoudis, a Ghanaian national, on eight counts of espionage. <u>In re Washington Post Co.</u>, 807 F.2d 383, 386 (4th Cir. 1986). After the U.S. government

and the government of Ghana negotiated a plea agreement, they jointly and secretly moved the court to suspend his sentence and exchange him for some U.S. citizens accused of spying in Ghana. Id. The U.S. and the defendant jointly moved to have the plea taken *in camera* and submitted an affidavit from an Internal Security Section attorney in the Justice Department. Id. The affidavit opined that the plea and sentencing should be secret because disclosure could "jeopardize the success of the exchange and pose a threat to the lives of persons subject to the jurisdiction of the Government of Ghana." Id. The affidavit also requested that the related filings not be listed on the docket. The hearing on those motions was held *in camera*, and, pursuant to an oral motion purportedly based on the Classified Information Procedures Act, the docket remained silent as to the filings. Id. *The Washington Post* learned of the proceedings, moved to intervene and objected to the secrecy.

Owing to national security risks, the government argued that traditional procedures required to seal documents or close court proceedings were not applicable in the case and that the court should defer to the security determinations reached by the federal agencies. The Fourth Circuit found that argument lacking. "While we recognize, and share, the government's concern that dangerous consequences may result from the inappropriate disclosure of classified information, we do not believe that adherence to the procedures outlined in *Knight Publishing* would create an unacceptable risk of such disclosure. ... All that the district court must do is to provide interested persons with notice of the government's motion and an opportunity to voice their objections."[9] Id. at 391. The Court further addressed the problems inherent in ceding to the executive branch serious decision-making that is the province of the courts:

---

[9] The traditional principals of closure articulated in Knight Publishing are discussed below.

> We note further that, troubled as we are by the risk that disclosure of classified information could endanger the lives of both Americans and their foreign informants, we are equally troubled by the notion that the judiciary should abdicate its decisionmaking responsibility to the executive branch whenever national security concerns are present. History teaches us how easily the spectre of a threat to "national security" may be used to justify a wide variety of repressive government actions. A blind acceptance by the courts of the government's insistence on the need for secrecy, without notice to others, without argument, and without a statement of reasons, would impermissibly compromise the independence of the judiciary and open the door to possible abuse. Accordingly, we hold that the procedural requirements set forth in *Knight Publishing* are fully applicable in the context of closure motions based on threats to national security.

Id. at 391-92. The Fourth Circuit said the district court "plainly failed to comply with those procedural requirements" by not giving notice of the motions to seal, by refusing *The Post* a meaningful opportunity to be heard on the issues, and by failing to provide an adequate explanation of the reasons for sealing with "specific findings concerning the interests at stake, a discussion of the applicable constitutional principles, or a consideration of possible alternatives to closure." Id. at 392.

In addition to objecting to the procedures employed, the Fourth Circuit found the substantive rulings erroneous.

> The Supreme Court's recent decision in *Press-Enterprise II*, ____ U.S. ____, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986) makes clear that criminal proceedings may be closed to the public without violating First Amendment rights only if (1) closure serves a compelling interest; (2) there is a "substantial probability" that, in the absence of closure, that compelling interest would be harmed; and (3) there are no alternatives to closure that would adequately protect that compelling interest. Moreover, the court may not base its decision on conclusory assertions alone, but must make specific factual findings.

Id. The district court's reliance on CIPA as the sole basis for closure was ill-founded.

> First, even if the Classified Information Procedures Act purported to resolve the issues raised here, the district court would not be excused from making the appropriate constitutional inquiry. ... Second, the Classified Information Procedures Act is simply irrelevant to the issues raised here. ... the district court may hold an *in camera* hearing for the purpose of making such advance

evidentiary determinations. The Act does not purport to authorize district courts to hold *in camera* hearings for other purposes.

Id. at 393.

Much more recently (and, incidentally, also in connection with criminal proceedings arising out of the current "war on terror"), the Fourth Circuit had the opportunity to re-address the interplay between CIPA and traditional principles applicable to sealing court records or closing court proceedings. U.S. v. Moussaoui, 65 Fed. Appx. 881, 884, 2003 WL 21076836, 1 (4th Cir. 2003). At issue in Moussaoui were the requests made by a host of media organizations for access to documents related to defendant Moussaoui's request to depose captured Al Qaeda operatives. The court granted Moussaoui the right to depose one of the operatives, and the United States government appealed that ruling. The pleadings and motions related to the appeal were filed under seal, and the oral arguments were scheduled to take place in closed session, as well. Id. at 885. When the closure was challenged, the Fourth Circuit refused to keep the oral argument and pleadings completely under seal:

> CIPA alone cannot justify the sealing of oral argument and pleadings. *See In re Wash. Post Co.,* 807 F.2d 383, 393 (4th Cir.1986) (noting that the district court must conduct constitutional inquiry even when CIPA applies because "[t]he district court may not simply assume that Congress has struck the correct constitutional balance"); *United States v. Poindexter,* 732 F.Supp. 165, 167 n. 9 (D.D.C.1990) (observing that "CIPA obviously cannot override a constitutional right of access"). Indeed, even in the absence of CIPA, the mere assertion of national security concerns by the Government is not sufficient reason to close a hearing or deny access to documents. Rather, we must independently determine whether, and to what extent, the proceedings and documents must be kept under seal.

Id. at 886-87, 2003 WL 21076836, at 3.

In light of the clear terms of the CIPA order and the Fourth Circuit cases described above, the Court should immediately unseal all declassified information in the docket entries that

are sealed by reason of the protective order. These are docket numbers 50, 51, 52, 53, 54, 58, 59, 60, 61, 63, 65, 66, 70, 71, 72, 78, [a second] 78, 81, 82, 91, 92.[10]

## B. <u>The Sealing Orders Should Be Vacated.</u>

The Court has apparently also granted two motions to seal filed by the defendant. Neither motion was granted consistent with first amendment principles. Despite the "ingoing presumption in favor of openness," <u>In re Charlotte Observer</u>, 882 F.2d 850, 853 (4th Cir. 1989), neither of the motions is a public record, not to speak of the documents they address. Moreover, the orders are so vague as to be meaningless under traditional principals of access.

In <u>In re Knight Publishing Company</u>, 743 F.2d 231 (4th Cir.1984), the Fourth Circuit articulated the procedures that must be undertaken before records are sealed or proceedings closed. Even more recently, in North Carolina's most noteworthy case dealing with the subject in a decade, the Fourth Circuit Court of Appeals revisited the question of sealing court records.

> In <u>Knight</u>, we explained that, while a district court "has supervisory power over its own records and may, in its discretion, seal documents if the public's right of access is outweighed by competing interests," the "presumption" in such cases favors public access. <u>Knight</u>, 743 F.2d at 235; see also Stone, 855 F.2d at 182 ("The public's right of access to judicial records and documents may be abrogated only in unusual circumstances"). Accordingly, before a district court may seal any court documents, we held that it must (1) provide public notice of the request to seal and allow interested parties a reasonable opportunity to object, (2) consider less drastic alternatives to sealing the documents, and (3) provide specific reasons and factual findings supporting its decision to seal the documents and for rejecting the alternatives. See <u>Knight</u>, 743 F.2d at 235- 36; see also Stone, 855 F.2d at 181. These procedures "must be followed when a district court seals judicial records or documents." <u>Stone</u>, 855 F.2d at 179-80, 182.

Ashcraft v. Conoco, Inc., 218 F.3d 288, 302 (4th Cir. 2000). In <u>Ashcraft</u>, the Fourth Circuit found that the trial court failed miserably under the applicable standard. The Court noted that "despite the Morning Star's demonstrated interest in the case, no public notice of the parties' joint

---

[10] The Court must follow the <u>Knight Publishing</u> procedures if it, or the parties, believe there is some other basis for keeping declassified information in these pleadings under seal.

motion to seal the settlement agreement was given; no opportunity for interested parties to object was provided; there is no indication that the district court considered less drastic alternatives to sealing the agreement; and the court's sealing order did not identify any specific reasons or recite any factual findings justifying the court's decision to override the public's right of access to the settlement documents." Id. at 302-03. Accordingly, the Fourth Circuit found the sealing order void. *See also* Virginia Dept. of State Police v. Washington Post, 386 F.3d 567, 581 (4th Cir. 2004).

Likewise, in this case, there has not even been a cursory attempt to comply with the requirements of Knight and its progeny. There was no meaningful notice or opportunity for the public to be heard in opposition to the motions to seal. There was no notice of what the motions requested to have sealed, much less the basis for those requests. There is no evidence that the court entertained any measure less drastic than complete secrecy to accomplish any compelling governmental interests, and there is certainly no record of "specific reasons and factual findings supporting its decision to seal the documents and for rejecting the alternatives." Indeed, both orders contain a single sentence sealing the records, with no findings whatsoever. The court did not even make a passing attempt to satisfy the First Amendment concerns in this case, possibly relying instead on CIPA to be a one-size-fits-all solution to the requests for secrecy. Accordingly, the sealing orders should be vacated.

If the Court is concerned about unsealing records covered by either the protective order or the sealing orders, it may wish to follow the procedure the U.S. District Court for the Eastern District of Virginia employed in the Moussaoui prosecution, which raised issues virtually identical to those implicated in this case, i.e. providing for the safe treatment of national security information without compromising the rights of the defendant or the rights of the public. There,

the court gave the parties a short period of time to come forward with evidence of compelling interests justifying maintaining the documents under seal. If, after considering any such submissions, the court is persuaded that continued sealing is necessary, the court could enter an order with specific findings as to the compelling government interest served, the narrowness of the remedy, and the absence of any alternate remedy. A copy of one such order is the case attached to this Memorandum as Exhibit B.

## III.  CONCLUSION

"Only the most compelling reasons justify non-disclosure," In re Knoxville News-Sentinel Co., 723 F.2d 470, 476 (6th Cir. 1983). The issues at stake in this case are compelling, but as the Fourth Circuit has found on at least two similar occasions, though, even the most difficult cases involving matters of intense national significance can give way to a certain amount of public access and scrutiny. Intervenors do not challenge, or doubt, that certain documents filed in this case contain sensitive, national security information, but surely not every word of every document bears on national security. In the unlikely event that such is the case, the government nevertheless must come forth in open court and make that argument. The court must then carefully consider those arguments and reduce its conclusion to an order with specific findings, balancing the important First Amendment concerns against the need for secrecy. Intervenors respectfully observe that neither of those necessary steps has taken place, and therefore the withholding of any documents not classified by the federal government is a violation of the public's First Amendment right of access.

Respectfully submitted this 22nd day of March, 2005.

*Amanda Martin*

Hugh Stevens
C. Amanda Martin
Everett, Gaskins, Hancock & Stevens, LLP
Attorneys for The Washington Post, The Associated
Press, and The News & Observer Publishing
Company
127 West Hargett Street, Suite 600
Post Office Box 911 (27602)
Raleigh, North Carolina 27601
(919) 755 0025
(919) 755-0009 (fax)

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that the foregoing Memorandum in Support of Motion for Access to Portions of the Record was served on all parties of record by depositing true copies thereof with the United States Postal Service, first-class postage prepaid, addressed to the following:

Frank D. Whitney, Esq.
Eric D. Goulian, Esq.
Eastern District of North Carolina
800 Terry Sanford Building
310 New Bern Avenue
Raleigh, NC 27601-1461

Thomas P. McNamara, Esq.
Federal Public Defender
150 Fayetteville Street Mall, Suite 450
Raleigh, NC 27601

This the 22nd day of March, 2005.

*Amanda Martin*

C. Amanda Martin

13

| DATE | FILING | DKT # |
|------|--------|-------|
| 11/12/04 | NOTICE OF INTENT TO ASSERT PUBLIC AUTHORITY DEFENSE by David A. Passaro - filed UNDER SEAL (SKIF) [Date Entered: 11/22/04, By: jm] | 50 |
| | MOTION by David A. Passaro to compel - Under Seal (SCIF) [Date Entered: 12/06/04, By: jm] | 51 |
| | MEMORANDUM by David A. Passaro in support of [51-1] motion to compel- Under Seal (SCIF) [Date Entered: 12/06/04, By: jm] | 52 |
| 11/18/04 | SUPPLEMENTAL MOTION by David A. Passaro to compel discovery-Under Seal (SCIF) [Date Entered: 12/06/04, By: jm] | 53 |
| | MOTION by David A. Passaro to compel discovery relevant to public authority defense - Under Seal (SCIF) -lc:Judge Boyle [Date Entered: 12/06/04, By: jm] | 54 |
| 11/22/04 | Document Filed by USA as to David A. Passaro Titled:Prohibited Contact List - Under Seal (SCIF)- lc: Judge Boyle [Date Entered: 12/06/04, By: jm] | 58 |
| 11/30/04 | MOTION by USA as to David A. Passaro to seal - lc: Judge Boyle [Date Entered: 12/08/04, By: jm] | 64 |
| | REPLY by David A. Passaro to govt's opposition to deft's motion to dismiss for lack of jurisdiction - Under Seal (SCIF) -lc: Judge Boyle [Date Entered: 12/06/04, By: jm] | 59 |
| | MOTION by David A. Passaro to preserve documents lc: Judge Boyle (Under Seal) (SCIF) [Date Entered: 12/06/04, By: jm] | 60 |
| | MOTION by David A. Passaro to extend motion response time - lc: Judge Boyle - Under Seal (SCIF) [Date Entered: 12/06/04, By: jm] | 61 |

EXHIBIT 

| | | |
|---|---|---|
| 11/30/04 | MOTION by USA as to David A. Passaro to extend motion response time - Under Seal [Date Entered: 12/08/04, By: jm] | 63 |
| 12/7/04 | MEMORANDUM by David A. Passaro in support of motion to dismiss indictment as unconstitutional infringement [65-1] motion SEALED MOTION - (SCIF) [Date Entered: 12/08/04, By: jm] | 66 |
| 12/10/04 | ORDER as to David A. Passaro granting [64-1] motion to seal as to David A. Passaro (1) ( Signed by Judge Boyle OB Ref: Cys. dist.) [Date Entered: 12/15/04, By: jm] | 69 |
| 12/21/04 | SUPPLEMENTAL MOTION by David A. Passaro to compel discovery of criminal investigation division evidence - UNDER SEAL -(SCIF) lc: Judge Boyle [Date Entered: 12/23/04, By: jm] | 70 |
| 12/22/04 | MOTION by USA as to David A. Passaro to extend motion response time -UNDER SEAL -lc: Judge Boyle [Date Entered: 12/23/04, By: jm] | 71 |
| 1/3/05 | RESPONSE by USA as to David A. Passaro re - Deft's notice of intent to assert public authority defense and request for witness information - lc: Judge Boyle (UNDER SEAL) [Date Entered: 01/05/05, By: jm] | 72 |
| 1/5/05 | MOTION by USA as to David A. Passaro to seal govt's response to Deft's notice of intent to assert public authority defense and request for witness informationlc: Judge Boyle [Date Entered: 01/05/05, By: jm] | 73 |

| | | |
|---|---|---|
| 1/6/05 | ORDER as to David A. Passaro granting [73-1] motion to seal govt's response to Deft's notice of intent to assert public authority defense and request for witness information as to David A. Passaro (1) ( Signed by Judge Boyle OB Ref: Cys.dist.) [Date Entered: 01/07/05, By: jm] | 75 |
| | | |
| 1/21/05 | REPLY by David A. Passaro to response to govt's request for identification of public authority defense witnesses (Under Seal) - 1c: Judge Boyle [Date Entered: 01/21/05, By: jm] | 78 |
| | REQUEST by David A. Passaro For: list of govt. witnesses - 1c: Judge Boyle (Under Seal) (THIS DOCUMENT DOES NOT REQUIRE RULING BY THE JUDGE.) [Date Entered: 01/21/05, By: jm] | also 78 |
| | | |
| 1/26/05 | RESPONSE by USA as to David A. Passaro re [70-1] motion to compel discovery of criminal investigation division evidence and MOTION FOR COMPULSORY PROCESS - (UNDER SEAL) SCIF [Date Entered: 01/27/05, By: jm] | 81 |
| | RESPONSE by USA as to David A. Passaro re [43-1] motion to dismiss action for lack of jurisdiction - (UNDER SEAL) SCIF [Date Entered: 01/27/05, By: jm] | 82 |
| | | |
| 2/9/05 | REPLY by David A. Passaro to response to [70-1] motion to compel discovery and compulsory process (Under Seal)(SCIF) [Date Entered: 02/25/05, By: jm] | 92 |
| | | |
| 2/11/05 | REPLY by David A. Passaro to response to [65-1] motion SEALED MOTION - 1c: Judge Boyle [Date Entered: 02/25/05, By: jm] | 91 |

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

UNITED STATES OF AMERICA

                                        Criminal No. 01-455-A

ZACARIAS MOUSSAOUI
        a/k/a "Shaqil,"
        a/k/a "Abu Khalid
              al Sahrawi,"
                                    )
        Defendant.                  )

### ORDER

Before the Court is Intervenors' Motion for Access to
Certain Portions of the Record (Docket #514), in which they
request a modification of our Order of August 29, 2002 regarding
sealing of the defendant's pro se pleadings.  Intervenors
argue that the Order is broader than necessary to protect the
Government's legitimate interest in limiting the defendant's
ability to communicate with co-conspirators or sympathizers.
Specifically, the intervenors suggest that the defendant's pro se
pleadings be provisionally sealed for a maximum of ten days, and
thereafter placed in the public record unless the government
satisfies the Court that compelling interests justify maintaining
pleadings under seal

In response, the United States insists that maintaining all
of the defendant's pro se pleadings under seal is the least
restrictive means of ensuring that he does not communicate coded
messages to the outside world.  Rather than adopt the
intervenors' proposed modification of our Order of August 29,

EXHIBIT *B*

2002, the United States suggests that we direct the Clerk of Court not to file any of Mr. Moussaoui's pleadings "containing threats, racial slurs, calls to action, attempts to communicate messages to someone other than this Court, or other irrelevant or inappropriate language."

Sealing records or portions thereof in criminal cases is justified only if such an accommodation is narrowly tailored to serve compelling interests. See Press-Enterprise Co. v. Superior Court, 464 U.S. 501, 510 (1984); In re Knight Publishing Co., 743 F.2d 231, 234  4th Cir. 1984).  In our view, the United States' proposal does not properly balance the defendant's right to seek appropriate judicial relief against the public's right to access records in criminal cases and the United States' legitimate concerns about the defendant's efforts to communicate with the outside world.  See In re Washington Post Co., 807 F.2d 383, 392 4th Cir. 1986); In re Knight Publishing Co., 743 F.2d at 234

In light of the defendant's admitted membership in al Qaeda, repeated pledges of allegiance to Osama bin Laden and prayers for the destruction of the United States, we find the United States concerns about the defendant's efforts to communicate messages to his "people" through his court filings to be legitimate. However, since we issued our Order of August 29, 2002, the defendant has filed fewer pleadings and has significantly toned down his inappropriate rhetoric.  We, therefore, find that the

2

administrative burden on the United States of identifying and redacting problematic language from the defendant's pro se filings no longer justifies a total sealing of all of the defendant's pleadings

Because the Court is not qualified to determine whether the defendant is attempting to send messages to sympathizers or otherwise improperly communicate with the outside world, we must rely on the Government and its intelligence community to identify language in the defendant's pro se pleadings that might endanger national security. Unless there is a compelling reason to conclude otherwise, we will defer to the Government's expertise on this issue. Accordingly, the Intervenors' Motion for Access to Certain Portions of the Record (Docket #514) is GRANTED; and it is hereby

ORDERED that our Order of August 29, 2002 be and is modified to the following extent: All of the defendant's pro se pleadings will continue to be initially filed under seal. The United States will have ten days from the date a pleading is filed to advise the Court in writing whether the pleading should remain under seal or be unsealed with or without redactions. If it requests redactions, the United States need only submit a copy of the pro se pleading marked with the proposed redactions along with a brief written explanation of the reasons for the proposed redactions. If the United States does not so advise the Court,

3

the pleading at issue will be unsealed without redaction;[1] and it is further

ORDERED that counsel for the United States advise the Court in writing by 5:00 p.m. on Monday, October 7, 2002 of its position as to the unsealing or redaction of the defendant's pleadings docketed as #s 467, 469, 470, 471, 472, 491, 497, 498, 536, 537, 570 and 577.

The Clerk is directed to forward copies of this Order to the defendant, pro se; counsel for the United States; standby defense counsel; and counsel for the intervenors.

Entered this 27th day of September, 2002.

Leonie M. Brinkema
United States District Judge

Alexandria, Virginia

---

[1] The Court will also conduct its own review of the defendant's pro se pleadings, and will redact any insulting, threatening or inflammatory language which would not be tolerated from an attorney practicing in this court. Should the defendant's pleadings again become replete with inappropriate rhetoric, we will return to categorical sealing.

4