IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:04-CR-211-BO

FILED

AUG 1 2 2005

FRED L. BORCH III, CLERK
US DISTRICT COURT, EDNC
BY _____ DEP. CLK

UNITED STATES OF AMERICA,      )
                               )
        v.                     )        O R D E R
                               )
DAVID A. PASSARO,              )
                               )
        Defendant.             )
_____)

        This matter is before the Court on Defendant's Motion to Dismiss for Lack of

Jurisdiction pursuant to Federal Rule of Criminal Procedure 12(b)(2) and Defendant's self-styled

"Motion to Dismiss Indictment as an Unconstitutional Infringement of the Commander-In-

Chief's War Making Duties and Powers, and Contrary to the Congressional Joint Resolution

Authorizing Preemptive use of 'Necessary and Appropriate Force.'" In the underlying matter,

Defendant is charged with two counts of assault with a dangerous weapon and two counts of

assault resulting in serious bodily injury. A hearing was held on these motions in Raleigh on July

20, 2005. For the reasons detailed below, Defendant's Motions are DENIED.

## BACKGROUND

        On June 17, 2004, a federal grand jury returned an indictment charging Defendant with

assaulting a suspected terrorist during an interrogation conducted in Afghanistan on June 19th

and 20th, 2003. At the time of the alleged assault, Defendant was an independent contractor

working on behalf of the Central Intelligence Agency (CIA) to engage in paramilitary activities in

support of United States military personnel based in Kunar Province, Afghanistan. Specifically,

Cop. dist.: AUSA, FPD, DOJ

Defendant was operating out of a firebase occupied by American forces located just outside of the capital of Kunar Province, Asadabad.[1]

The Asadabad firebase is an old Soviet fort located approximately five miles from the Pakistani border on the shores of the Kunar River. The structure is an open-air, walled enclosure. Inside the walls are several tents and other buildings that serve as housing and support facilities for the troops stationed there. At the time Defendant was working at the firebase, it was occupied by members of the United States Army's 82nd Airborne Division and Special Operations personnel. In addition to the military units occupying the Asadabad firebase, CIA contractors, such as Defendant, were working there in support of the military effort. The Asadabad firebase served as a launching point for counterterroism efforts by military personnel and as a forward location to gather intelligence on terrorist activities. Additionally, contractors such as Defendant were training Afghan forces so they could assume responsibility for their own defense at some point in the future.[2]

During the month prior to June 18, 2003, the Asadabad firebase was the target of sporadic attacks from hostile terrorist forces operating in the region. On June 18, Abdul Wali, an Afghan national who was suspected in participating in rocket attacks against the Asadabad firebase, voluntarily presented himself at the firebase's front gate. Wali was taken into custody and held for questioning. Defendant was among the personnel tasked with interrogating Wali, and he

---

[1] Asadabad is a small agricultural town in the eastern mountains of Afghanistan which is probably most famous for being the birthplace of jihad against the Soviets in the late 1970's.

[2] United States forces have retained control of the Asabad firebase to the present day. Currently, the firebase serves as the headquarters for the Provincial Reconstruction Team serving Kunar Province.

participated in interrogations of Wali on June 19th and 20th, 2003. The government alleges that Defendant beat Wali with his hands, feet and a large flashlight during the interrogations. Wali died in a cell at the firebase on June 21, 2003, however Defendant is not charged with causing his death.

Defendant returned to the United States in July of 2003. As mentioned above, the grand jury returned an indictment on June 17, 2004, charging Defendant with assaulting Wali.[3] Defendant filed his Motion to Dismiss for lack of jurisdiction on November 1, 2004 and his "Motion to Dismiss Indictment as an Unconstitutional Infringement of the Commander-In-Chief's War Making Duties and Powers, and Contrary to the Congressional Joint Resolution Authorizing Preemptive Use of 'Necessary and Appropriate Force'" on December 7, 2004. The government has responded to both of these motions, and Defendant has replied to its responses. The Court conducted a hearing on the motions on July 20, 2005, and they are now ripe for ruling.

ANALYSIS

Federal Rule of Criminal Procedure 12(b)(2) provides that a party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the general issue. Fed. R. Crim. P. 12(b)(2) (2005). Defendant's jurisdictional challenges do not require the Court to try the general issue in order to be resolved; therefore, the motions are

---

[3] The relevant portions of 18 U.S.C. § 113 provide that, "[w]hoever, withing the special maritime and territorial jurisdiction of the United States, is guilty of an assault shall be punished as follows:
> (3) Assault with a dangerous weapon, with intent to do bodily harm, and without just cause or excuse, by a fine under this title or imprisonment for not more than ten years, or both.
> (6) Assault resulting in serious bodily injury, by a fine under this title or imprisonment for not more than ten years, or both."

18 U.S.C. § 113(a)(3),(6) (2005).

appropriately before the Court under Rule 12(b)(2).

Defendant's Motion to Dismiss for Lack of Jurisdiction

Defendant is charged with two counts of assault with a dangerous weapon and two counts of assault resulting in serious bodily injury. The indictment grounds jurisdiction on 18 U.S.C. § 7(9). Section 7(9) defines the "special maritime and territorial jurisdiction of the United States" to include:

> (A) the premises of United States diplomatic, consular, military or other United States Government missions or entities in foreign States, including the buildings, parts of buildings, and land appurtenant thereto or ancillary thereto or used for purposes of those missions or entities, irrespective of ownership; and
> (B) residences in foreign States and the land appurtenant or ancillary thereto, irrespective of ownership, used for purposes of those missions or entities or used by United States personnel assigned to those missions or entities.

18 U.S.C. §7(9) (2005). Defendant contends the language and legislative history of the statute show that Congress did not intend to extend the United States' jurisdictional reach to cover the circumstances that form the basis of his alleged crimes. The government argues that a plain-language reading of the statue is sufficiently broad to authorize Defendant's prosecution.

In resolving an issue of statutory construction, the Court's goal is to ascertain and implement Congress' intent. *Scott v. United States*, 328 F.3d 132 (4th Cir. 2003). To best achieve this end, the Court is obliged to begin its inquiry with the language of the statute. If the language of the statue is clear, "judicial inquiry into the statute's meaning, in all but the most extraordinary circumstances, is finished."[4] *South Carolina Dept. Of Health and Environmental*

---

[4] Defendant argues that the Court should review and consider the legislative history of Section 7(9). However, it is well-established that if the statute is unambiguous on its face, then the Court will not look to the legislative history. *See United States v. Akinkoye*, 185 F.3d 192

4

*Control v. Commerce and Industry Ins. Co.*, 372 F.3d 245 (4th Cir. 2004) (quoting *Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 475 (1992)). In reviewing the language of the statute, the Court will interpret the words in their ordinary, contemporary, common meaning unless they are defined otherwise. *United States v. Ickes*, 393 F.3d 501 (4th Cir. 2005) (citing *United States v. Maxwell*, 285 F.3d 336 (4th Cir. 2002)). Whether statutory language is plain or ambiguous is determined by referencing the language itself, the context in which it is used and the broader context of the statue as a whole. *Robinson v. Shell Oil Co.*, 519 U.S. 337 (1997). If possible, the Court must give effect to every provision and word in a statue and avoid any interpretation that might render statutory terms meaningless or superfluous. *Freytag v. Commissioner of Internal Revenue*, 501 U.S. 868 (1991).

As stated above, the government has grounded Defendant's indictment in 18 U.S.C. §§ 7(9)(A) and (B). If either subsection extends jurisdiction over the allegations made against Defendant, then Defendant's Motion must fail. The Court will construe the terms of both subsections.

<u>18 U.S.C. Section 7(9)(A)</u>

Subsection (A) extends the special and maritime jurisdiction of the United States to "the premises of United States diplomatic, counselor, military or other United States Government missions or entities in foreign States, including the buildings, parts of buildings, and land appurtenant thereto or ancillary thereto or used for purposes of those missions or entities, irrespective of ownership." 18 U.S.C. §7(9)(A) (2005). In construing the language of

---

(4th Cir. 1999) (citing *Ex Parte Collett*, 337 U.S. 55 (1949); *First United Methodist Church v. United States Gypsum Co.*, 882 F.2d 862 (4th Cir. 1989), *cert. denied*, 493 U.S. 1070 (1990)).

Subsection 7(9)(A), the Court relies on the common-language dictionary definitions of the operative terms. *See United States v. Lehman*, 225 F.3d 426 (4th Cir. 2000) (citing *Fruit Growers, Inc. v. Brogdex Co.*, 283 U.S. 1 (1931)).

To determine whether the scope of Section 7(9)(A) covers the factual context of this case, the critical terms are "premises" and "missions." According to Webster's Third New International Dictionary, "premises" means a "tract of land with the buildings thereon." *Webster's Third New International Dictionary* 1789 (1993). "Mission" is defined by Webster's as "a body of persons sent to perform a service of carry on an activity." *Id.* at 1445. More specifically, if "military" and "mission" are combined into "military mission," as is proper in this case, the definition becomes "a team of military specialists sent to a foreign country to assist in the training of its armed forces." *Id.* at 1445.

The evidence before the Court demonstrates that the United States has been conducting a military mission in Afghanistan since late 2001. The activities of the United States military at the Asadabad firebase are a part of that larger mission. While occupied by United States forces, the Asadabad firebase has served as a staging ground for military operations and has housed both military and non-military personnel. The assault Defendant allegedly committed occurred while United States forces were occupying the Asadabad firebase. In fact, the assault allegedly occurred on the premises of the firebase. Accordingly, applying the plain language of Section 7(9)(A) to these facts, the Court concludes that the Asadabad firebase was the premises of a United States military mission, being used for the purposes of that mission at the time the alleged

assault occurred.[5]

18 U.S.C. Section 7(9)(B)

Subsection (B) of Section 7(9) extends the special maritime and territorial jurisdiction of the United States to "residences in foreign States and the land appurtenant or ancillary thereto, irrespective of ownership, used for purposes of those missions or entities or used by United States personnel assigned to those missions or entities." As detailed above, the United States has been conducting an ongoing military mission in Afghanistan from 2001 to the present, and that the Asadabad firebase was a part of that mission. *See* discussion *supra*. Therefore, the only term in Subsection (B) that the Court must define is "residence."

Webster's Third New International Dictionary defines "residence" as "a building used as a home." *Webster's Third New International Dictionary* 1931 (1993). The Asadabad firebase contained a number of tents and some mud-walled structures that provided housing and support to military personnel stationed there. These personnel ate, slept and worked out of the firebase. Applying the language of Section 7(9)(B) to these facts, the Court holds that the assault Defendant allegedly committed occurred on the land appurtenant or ancillary to the residences that were being used by United States personnel assigned to Afghanistan as a part of the United States' military mission there.

---

[5] Defendant also urges the Court to apply the "rule of lenity" in interpreting Section 7(9). Under this principle of interpretation, the application of ambiguous criminal statutes should be resolved in favor of a defendant. *Rewis v. United States*, 401 U.S. 808 (1971). However, there must be a "genuine ambiguity" in the statute before the rule of lenity will apply. *Perrin v. United States*, 444 U.S. 37 (1979). The Supreme Court has directed that courts apply the traditional tools of statutory construction before finding an ambiguity in the statute. *Caron v. United States*, 524 U.S. 308 (1998). Because the Court finds that the plain meaning of Section 7(9) sufficiently resolves the interpretive issues before it, there is no reason to resort to the rule of lenity. *See United States v. Gosselin World Wide Moving, N.V.*, 411 F.3d 502 (4th Cir. 2005).

Because the language of both 18 U.S.C. §§ 7(9)(A) and (B) is sufficiently broad to supply this Court with subject matter jurisdiction over the government's prosecution of Defendant, Defendant's Motion to Dismiss for lack of subject matter jurisdiction is DENIED.

<u>Defendant's Constitutional Challenges</u>

Defendant argues that the Court cannot hear this case because the application of Section 113 to his conduct in Afghanistan violates the Commander in Chief's war-making powers, or alternatively, Public Law 107-40.[6] The government argues that Defendant's challenge is baseless and misinterprets the executive branch's ability to regulate the conduct of its civilian agents.

The facts and law are incontrovertible that the President has the power as Commander in Chief to defend America and America's interests when either is under attack. In recognition of both the President's express power contained in the Constitution and Congress' power to declare war, both the President and Congress authorized American military intervention in the Afghan theater commencing as soon as practicable following the attacks on America on September 11, 2001. The events and facts alleged in the indictment in this case arise out of that military intervention. The President, in the conduct of military activities, is bound directly and indirectly by the limits of the law.

What the President, through his executive departments, is doing in this case is prosecuting a person to whom some authority was entrusted for the alleged criminal misuse of that authority. Defendant's suggestion that, because the President has the right and obligation to

---

[6] Public Law 107-40 authorizes the President to "use all necessary and appropriate force" to "prevent any future acts of international terrorism against the United States" and to "protect United States Citizens both at home and abroad." Because the substance of Defendant's challenge rests on the President's exclusive authority to direct the military and conduct the war in Afghanistan, the reference to Public Law 107-40 does not require separate or additional analysis.

exercise military force in Afghanistan, the President does not have the corresponding right and obligation to see that the force is within the express bounds of the law is an argument that has no logic or merit. Defendant is not entitled to invoke the President's war making power nor is he entitled to invoke Congress' authorization of that power as a shield against allegations that he violated the laws of the United States in the conduct of his duties. His challenge to the Court's jurisdiction on these grounds fails. Accordingly, Defendant's "Motion to Dismiss Indictment as an Unconstitutional Infringement of the Commander-In-Chief's War Making Duties and Powers, and Contrary to the Congressional Joint Resolution Authorizing Preemptive use of 'Necessary and Appropriate Force'" is DENIED.

## CONCLUSION

For the reasons outlined above, Defendant's Motions to Dismiss are DENIED. This case may proceed in its entirety.

SO ORDERED.

This the _11_ day of _August_, 2005.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE

9