UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:04-CR-211-1BO

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) |
| | ) |
| DAVID A. PASSARO, | ) |
| Defendant. | ) |

**GOVERNMENT'S CONSOLIDATED MOTION
IN LIMINE AND MEMORANDUM OF LAW TO
EXCLUDE DEFENDANT'S PUBLIC AUTHORITY DEFENSE**

The United States of America, by and through the United States Attorney for the Eastern District of North Carolina, hereby moves, for the reasons set forth below, to exclude Defendant David A. Passaro's public authority defense at trial.

**PRELIMINARY STATEMENT**

The Defendant's public authority defense should be excluded because 1) he has failed to articulate any facts which would justify its admission at trial, and 2) the defense as alleged fails as a matter of law.

1

**STATEMENT OF FACTS**

*Passaro's Illegal Conduct*

In June of 2003, Passaro was a Central Intelligence Agency ("CIA") contractor working in Afghanistan. Passaro was engaged in paramilitary activities in support of United States military personnel at a military base near the town of Asadabad, Kunar Province, Afghanistan ("Asadabad Base"). The Asadabad Base was subjected to frequent rocket attacks. On June 18, 2003, Wali, who was suspected of participating in these rocket attacks, presented himself at the Asadabad gate and voluntarily surrendered to U.S. forces. Military personnel placed Wali in a detention cell at Asadabad Base.

On June 19 and 20, 2003, Passaro questioned Wali about the rocket attacks on Asadabad Base. During the questioning, Passaro beat Wali's arms, wrists, knees and abdomen using a metal flashlight, closed fist and shod foot. Passaro also, on at least one occasion, kicked Wali in the groin. On June 21, 2003, Wali died in at cell at Asadabad Base.

On June 17, 2004, a grand jury in the Eastern District of North Carolina indicted Passaro on two counts of assault with a dangerous weapon in violation of 18 U.S.C. § 113(a)(3), and two counts of assault resulting in serious bodily injury in violation of 18 U.S.C. § 113(a)(6). Later that same day, Passaro was arrested at his place of employment on Fort Bragg Army Base.

2

*The Public Authority Defense*

On November 12, 2004, Passaro filed a "Notice of Intent to Assert Public Authority Defense," pursuant to Rule 12.3, Fed.R.Crim.P. In his Rule 12.3 Notice, Passaro baldly asserts, without exposition, that "he acted under the authority of the Central Intelligence Agency (CIA) and President George W. Bush, acting in his capacity as Commander-in-Chief."[1] Passaro also states that his contracted employment term with CIA "lasted from December 2002 until September 2003." Docket Entry No. ("D.E.") 50 (Rule 12.3 Notice). Finally, Passaro notes that he "served as a CIA paramilitary operating with Special Operations Forces out of the Asadabad firebase, in Kunar Province, Afghanistan," where he purportedly acted on behalf of certain CIA employees and senior officials, including "the CIA Director of Operations during the relevant time," and "George J. Tenet, Director of the CIA during the relevant time period." Id.

---

[1] Passaro cannot legitimately contend that he was personally authorized by President Bush to commit the illegal conduct at issue in this prosecution. Passaro was a contractor for the CIA, and, as he himself asserts, served at the direction of CIA officials. Accordingly, any claim by Passaro of public authority must be limited to purported instructions or authority he may have received from the CIA. This motion is therefore limited to whether Passaro can claim that he had CIA authority to justify his assault with a dangerous weapon, closed fist and shod foot.

3

On January 3, 2005, the Government responded to the Rule 12.3 Notice and denied that Passaro exercised any delegated "authority" to commit the criminal acts for which he has been charged. In its response, the Government also requested that Passaro disclose the name, address and telephone numbers of each witness he intends to rely upon to establish his purported defense. See D.E. 72; Fed. R. Crim. P. 12.3(a)(4)(A). On January 20, 2005, Passaro responded with an initial list identifying at least thirteen witnesses he intends to call in support of his defense (including former White House Counsel and current Attorney General Alberto Gonzales and former Director of Central Intelligence George Tenet), while expressly reserving his right to supplement the list once discovery has been completed. See D.E. 78.

On May 10, 2005, Passaro filed a supplemental statement identifying seven new purported public authority witnesses, including Porter J. Goss, the current Director of the CIA. See D.E. 107. The Government's June 9, 2005, response provided its list of witnesses to negate Passaro's defense. See D.E. 117. Specifically, the Government stated that:

> Since the Government has a good faith basis to believe that the [sic] each of the individuals listed in the defense's statement of public authority witnesses would either not be relevant to its public authority defense or in fact would provide testimony in actual opposition to it, the Government hereby fully incorporates and adopts the defense's list to this notice.

4

Id. The Government also identified eight additional witnesses to oppose Passaro's defense. See id.

### Passaro's CIPA Section 5 Notice

On September 2, 2005, Passaro filed his notice of intent to disclose classified information during trial pursuant to 18 U.S.C.S. App. III § 5 ("Classified Information Procedures Act" or "CIPA"). The purpose of CIPA Section 5 is to provide notice to the Government of all classified information the defense expects to elicit, introduce or otherwise disclose at trial. On September 16, 2005, the Government moved to strike Passaro's notice as insufficient under Section 5. See D.E. 135. On October 4, 2005, pursuant to a September 20, 2005, court proceeding concerning his CIPA Section 5 notice, and the Court's September 28, 2005, order on that issue, Passaro filed a "Modified Notice of Intention to Disclose Classified Information During Jury Trial" ("Modified Notice") to "provide more specific notice."[2] Notwithstanding the Court's instruction to provide more detailed notice, Passaro's Modified Notice outlines, in only the vaguest of terms, information that would be relevant to his public authority defense, to wit, that "the CIA provided guidance to its field

---

[2] Pursuant to a September 28, 2005 Order, Defendant filed on October 5, 2005 a "Modified Notice of Intention to Disclose Classified Information During Jury Trial." That "Modified Notice," of over 30 pages and 338 paragraphs, appears to supercede and nullify Defendant's previous slightly over two-page submission, to which the Government was unable to reply for reasons detailed at the September 20, 2005 hearing. Accordingly, the Government has interpreted the "Modified Notice" as the sole operative notice, both as a matter of practicality and because the Government believes that this procedure is in accordance with the

5

officers" concerning "acceptable techniques" when "detaining and questioning suspected Al Qaeda and Taliban operatives." Modified Notice at ¶ 70. But Passaro never describes with any specificity what that guidance was or what he was personally told, and by whom, concerning acceptable interrogation methods. See id.

Indeed, in neither Passaro's Rule 12.3 Notice (or supplemental papers filed pursuant thereto) nor his initial or modified CIPA Section 5 notices, has Passaro even identified the basis or nature of his public authority defense, how and when such "authority" was delegated to him and by whom, or that he even had the "authority" to beat Wali's arms, wrists, knees and abdomen using a metal flashlight, closed fist or shod foot.[3]

### ARGUMENT

**PASSARO'S PUBLIC AUTHORITY DEFENSE SHOULD BE EXCLUDED BECAUSE (i) PASSARO HAS FAILED TO MEET HIS PRETRIAL BURDEN OF PROOF, AND (ii) HIS DEFENSE FAILS AS A MATTER OF LAW**

#### I. Passaro Has Failed to Proffer Any Evidence to Support His Affirmative Defense

A defendant asserts a "public authority" defense when he contends that he committed an otherwise illegal act in reasonable reliance upon a statement or act of a government official with legal authority to empower commission of the

---

Court's intent.
[3] The Government has put counsel for the Defendant on notice that any information dealing with alleged interrogations should be considered classified for purposes of CIPA, and therefore would have to be

6

charged conduct. See U.S. v. Fulcher, 250 F.3d 244, 253-54 (4th Cir. 2001); U.S. v. Achter, 52 F.3d 753, 755 (8th Cir. 1995); U.S. v. Baptista-Rodriguez, 17 F.3d 1354, 1368 n. 18 (11th Cir. 1994). When a defendant seeks to assert this affirmative defense, he must file a Rule 12.3 Notice.

Rule 12.3 is a procedural mechanism requiring a defendant to notify the Government if the defendant "intends to assert a defense of actual or believed exercise of public authority on behalf of a law enforcement agency or federal intelligence agency at the time of the alleged offense." Fed. R. Crim. P. 12.3(a)(1). The Notice must identify the agency involved, the "agency member on whose behalf the defendant claims to have acted," and the "time during which the defendant claims to have acted with public authority." Fed. R. Crim. P. 12.3(a)(2). In response to the Notice, the Government can request that the defendant disclose contact information for "each witness the defendant intends to rely on to establish a public authority defense." Fed. R. Crim. P. 12.3(a)(4)(A).

The Rule's notice provisions were, in fact, designed to protect the *Government* from unfair prejudice. See 24 Moore's Federal Practice, § 612.3 App. 01 (Matthew Bender 3d ed. 1997) (original committee note to Rule 12.3 states that "[w]ithout a notice provision, the government may be unfairly surprised at trial by a public authority defense."); see also U.S. v.

---

contained in Defendant's CIPA Section 5 notice.

Burrows, 36 F.3d 875, 881 (9th Cir. 1994) ("the rule's purpose is to avoid unfair surprise to the government because the defense 'remains an unusual defense' and 'the government rarely will have reason to anticipate it.'"); U.S. v. Seeright, 978 F.2d 842, 849 (4th Cir. 1992) (the Rule "ensures that no party will be surprised at trial.").

In any criminal prosecution, a defendant may be required to proffer, before trial, legally sufficient proof to support an affirmative defense upon a filing by the Government of a motion in limine to exclude such a defense. See U.S. v. Moreno, 102 F.3d 994, 997-98 (9th Cir. 1996) (district court properly granted government's pretrial motion to exclude duress defense where defendant failed to proffer evidence that he lacked reasonable opportunity to escape threatened harm); U.S. v. Pearrell, No. 94-5945, 1996 WL 10283, at *2-*3 (4th Cir. Jan. 9, 1996) (unpublished opinion) (district court properly excluded affirmative defenses of good faith and entrapment by estoppel where defendant failed to provide sufficient evidence before trial). When a defendant fails to make such a prima facie showing, the defendant may be precluded from presenting the affirmative defense at trial. See U.S. v. Blair, No. 98-10452, 2000 WL 126092, at *1 (9th Cir. Feb. 2, 2000) (unpublished opinion) ("When a defendant fails to make a prima facie showing for the defense, the defendant may be precluded from presenting the defense, as well as any supporting evidence, at trial."); Moreno, 102 F.3d

at 997-98; Achter, 52 F.3d at 755 (district court properly granted government's pretrial motion to exclude public authority defense because state official could not authorize violation of federal firearm statute and defendant's proof showed his reliance was unreasonable); Pearrell, 1996 WL 10283, at *2-*3; U.S. v. Yeley, 346 F. Supp. 2d 969, 971-74 (S.D. Ind. 2004) (granting government's motion in limine and excluding public authority and entrapment by estoppel defenses because defendant's reliance was unreasonable).

Thus, a defendant may present a public authority defense at trial over the Government's motion to exclude such a defense, only when he has proffered sufficient facts to prove that he committed an otherwise illegal act in reasonable reliance upon a statement or act of a government agent with legal authority to sanction the conduct.[4] See Blair, 2000 WL 126092, at *1; Achter, 52 F.3d at 755; Yeley, 346 F. Supp. at 971-74.

---

[4] Rule 12.3 does not alter a defendant's obligation to provide substantive, prima-facie proof of his affirmative defense prior to trial. Rule 12.3 is merely a procedural device to put the Government on notice that an unusual defense will be asserted in the litigation. See Fulcher, 250 F.3d at 254 n. 5; U.S. v. Burrows, 36 F.3d 875, 881 (9th Cir. 1994).

In this case, Passaro's Notice contains the minimum information required by Rule 12.3(a)(2) to provide notice that he intends to rely on a public authority defense, but his filings under CIPA Section 5 are devoid of any facts to support such a defense. Instead, Passaro appears content to rely upon his unsupported assertion in his Rule 12.3 Notice that "he acted under the authority of the Central Intelligence Agency (CIA) and President George W. Bush,[5] acting in his capacity as Commander-in-Chief." But Passaro's conclusory assertions fail to detail the scope and substance of the authority, or how he acted in reasonable reliance on it. See Moreno, 102 F.3d at 997-98; Pearrell, 1996 WL 10283, at *2-*3.

Specifically, Passaro does not even identify, in his Section 5 Notice or any other filing, who authorized him to commit the charged criminal offenses -- i.e., assaulting Wali with a flashlight, striking him with a closed fist, and kicking him with shod feet -- when he was purportedly so authorized, and how, and under what circumstances such authorization was communicated to him. All of which, if any of it were true, would have to be contained within the four corners of his CIPA Section 5 notice. These facts are all clearly within his personal knowledge and not dependent upon any documents or evidence he may receive in discovery.

---

[5] Counsel for the United States has interviewed every current and former CIA employee listed in the defendant's 12.3 notice, with the exception of DCIA Goss and DCI Tenet. Without exception, each has denied authorizing the Defendant or anyone else to act in a manner consistent

10

In sum, Passaro has not provided one scintilla of evidence to support any component of his specious and hollow defense that he "acted under the authority" of the CIA during his attack. Because Passaro has failed to proffer the underlying classified information that would be necessary to support his public authority defense, it should be summarily excluded. See Blair, 2000 WL 126092, at *1; Moreno, 102 F.3d at 997-98; Achter, 52 F.3d at 755; Pearrell, 1996 WL 10283, at *2-*3; Yeley, 346 F. Supp. 2d at 971-74.

**II. Passaro's Affirmative Defense Fails as a Matter of Law**

Even if the Court finds that Passaro's bare-bones Notice and Section 5 pleading were sufficient to permit him to proceed with a public authority defense at trial, and, respectfully, it should not, Passaro's public authority defense still fails because no CIA official had legal authority to authorize the acts for which Passaro has been charged.

A defendant may only assert a public authority defense when his illegal conduct was in reasonable reliance on the *actual* authority of a government official to sanction it. See Fulcher, 250 F.3d at 253-54; U.S. v. Pitt, 193 F.3d 751, 757-58 (3rd Cir. 1999); U.S. v. Rosenthal, 793 F.2d 1214, 1235-36 (11th Cir. 1986). A defendant's reliance upon a government official's *apparent* authority is insufficient -- that is, a

---

with the crimes as charged in the indictment.

mistake of law as to the official's legal ability to authorize the conduct is no defense. Fulcher, 250 F.3d at 253 ("reliance on the apparent authority of a government official is nothing more than a mistake about 'the legal prerogatives attached' to such status and thus constitutes a mistake of law."); Rosenthal, 793 F.2d at 1235 ("a defendant may only be exonerated on the basis of his reliance on real and not merely apparent authority.").

The Fourth Circuit's decision in Fulcher is controlling. In Fulcher, the defendants were convicted of various money laundering and drug violations relating to narcotics trafficking in a Virginia prison. Id., 250 F.3d at 247. Following trial, and before sentencing, a Drug Enforcement Administration ("DEA") agent -- who had testified at trial that defendants were not authorized to sell drugs -- submitted a letter to the trial court stating that defendants may have been under the mistaken impression that they were authorized to commit the illegal acts. Id. at 247-48. After questioning the DEA agent, the district court ordered a new trial holding that the material was directly related to the asserted innocent intent and public authority defenses. Id. at 248.

On appeal, the Fourth Circuit found that the district court did not abuse its discretion in holding that the newly-discovered evidence was material. Id. at 251. But the Court found that in order to mount an innocent intent or public authority defense, the government official authorizing the

12

conduct -- here the DEA agent -- must possess *actual*, not apparent, authority: "reliance on the apparent authority of a government official is nothing more than a mistake about 'the legal prerogatives attached' to such status and thus constitutes a mistake of law." Id. at 253. The Court remanded for a determination consistent with this holding.

Here, Passaro cannot demonstrate that a CIA official had *actual* authority to sanction his attack on Wali during his questioning. As government documents provided during classified discovery make abundantly clear, CIA forbids its employees and contractors from engaging in the conduct for which Passaro has been charged. (See "Government's Classified Attachment to Its Motion to Exclude Defendant's Public Authority Defense," filed separately In Camera, Under Seal with the Court Security Officer).

Moreover, no CIA official could have the "authority to authorize conduct which would violate 'the constitution or statutes of the United States.'" Rosenthal, 793 F.2d at 1235 (citing Exec. Order. No. 12333); see U.S. v. Matta-Ballesteros, 71 F.3d 754, 770 n. 12 (9th Cir. 1995); U.S. v. Reyes-Vasquez, 905 F.2d 1497, 1499 (11th Cir. 1990). Rosenthal and Reyes-Vasquez are directly on point.

In Rosenthal, the Eleventh Circuit specifically rejected an argument that the CIA, or any other U.S. intelligence agency, could have actual authority to sanction violations of federal narcotics laws. Id., 793 F.2d at 1236. The

13

defendants had been convicted of engaging in a large-scale cocaine smuggling operation. Two of the defendants argued to the trial court that a purported CIA agent had authorized their smuggling activities as part of an intelligence operation, but the trial court limited their "CIA defense" evidence and rejected their proposed jury instruction. Id. at 1235. On appeal, the Eleventh Circuit found that because no CIA official could have had actual authority to sanction the narcotics violations, the public authority defense failed as a matter of law. Id. at 1236.

Similarly, in Reyes-Vasquez, the defendant -- who was convicted of possessing cocaine with intent to distribute -- also raised a CIA public authority defense. Id., 905 F.2d at 1498-99. Specifically, Reyes-Vasquez claimed that he set up a "cocaine transaction pursuant to his work in a CIA-run intelligence operation designed to infiltrate a leftist Colombian terrorist organization, M-19." Id. at 1499. Reyes-Vasquez argued that the CIA intended to "arrest" two individuals and "use the threat of criminal prosecution to persuade them to act as informants for the CIA."[6] Id. The district court rejected Reyes' "CIA intelligence gathering" defense, and granted the Government's pretrial motion to exclude testimony about Reyes' authority. Id.

---

[6] Reyes did not know that one of those individuals was a DEA confidential informant. Id.

On appeal, Reyes-Vasquez argued that the district court should have permitted testimony concerning his belief that the CIA had authority to conduct drug "sting" operations. Id. But the Eleventh Circuit held, following Rosenthal, that because the CIA could not have actual authority to violate federal narcotics laws, the trial court properly excluded the public authority defense. Id.

Thus, Passaro could not have relied upon a CIA official's *actual* authority during his attack on Wali in violation of 18 U.S.C. §§ 113(a)(3), (6). Because no actual authority did or could exist, Passaro's public authority defense fails and should be excluded at trial. See Fulcher, 250 F.3d at 253-54; Pitt, 193 F.3d at 757-58; Moreno, 102 F.3d at 997-98; Achter, 52 F.3d at 755; Reyes-Vasquez, 905 F.2d at 1499; Rosenthal, 793 F.2d at 1235-36; Yeley, 346 F. Supp. 2d at 971-74.

## CONCLUSION

Passaro's public authority defense is factually and legally baseless. Passaro has merely relied upon his Rule 12.3 Notice to support his affirmative defense, but he has not proffered any information concerning who actually authorized his illegal attack on Wali, when he was purportedly so authorized, and how, and under what circumstances, such authorization was communicated to him. Passaro's failure to

articulate any evidence to substantiate his affirmative defense necessitates its pretrial exclusion.

Even if this Court should find that his bare-bones assertion of "authority" is somehow sufficient to permit the Defendant to put forth a public authority defense, and it should not, Passaro should still be precluded from tendering the defense at trial because it fails as a matter of law. The plain, inescapable truth is that no CIA official could have actual authority to sanction the illegal conduct for which Passaro has been charged.

Accordingly, under well-settled and controlling law, the Government's motion to exclude the affirmative defense should be granted.

Respectfully submitted this 23RD day of November 2005,

FRANK D. WHITNEY
United States Attorney

BY: JAMES A. CANDELMO
Assistant United States Attorney

CERTIFICATE OF SERVICE

This is to certify that I have this 23rd day of November, 2005, served a copy of the foregoing upon the Defendant in this action by hand delivery of the same addressed as follows:

THOMAS MCNAMARA
Federal Public Defender
Raleigh, North Carolina

s/ James A. Candelmo
JAMES A. CANDELMO