UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:04-CR-211-BO(1)

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DAVID A. PASSARO | MOTION TO DISMISS INDICTMENT ON VOID FOR VAGUENESS GROUNDS AND INCORPORATED MEMORANDUM OF LAW |

DAVID A. PASSARO, defendant in the above-captioned case, by and through counsel, hereby moves this Honorable Court to dismiss the indictment, on void for vagueness grounds. As applied to this case – the CIA interrogation of a terrorist suspect under battlefield conditions – the assault statute, 18 U.S.C. § 113, is unconstitutionally vague, as it incapable of providing fair notice of the proscribed conduct to similarly situated CIA operatives and of curtailing arbitrary enforcement by the Justice Department.

## STATEMENT OF CASE

The indictment alleges that Mr. Passaro, while serving as a CIA operative at a tactical firebase in Afghanistan, assaulted a terrorist suspect linked to attacks on American and Afghani troops. The indictment charges violations of 18 U.S.C. §§ 113(a)(3) and (a)(6), which criminalize assaults "within the special maritime and territorial jurisdiction of the United States." The current motions filing deadline is December 27, 2005. This case is not yet calendared for trial.

## STATEMENT OF FACTS

The indictment grounds jurisdiction upon 18 U.S.C. § 7(9)(A), which in relevant part

1

/C: Boyle  Unclassified

provides: "With respect to offenses committed by or against a national of the United States . . . [special territorial jurisdiction] includes the premises of United States diplomatic, consular, military, or other United States missions or entities in foreign States . . .."

This provision formed part of the USA PATRIOT ACT of 2001, Pub. L. 107-56, 115 Stat. 377 (October 26, 2001), and was based on proposed legislation drafted by the Department of Justice as part of this anti-terrorism legislation passed in response to the September 11th Attacks. Docket Entry 44, pp. 2-4.[1]

In 2002, the Justice Department's Office of Legal Counsel, at the behest of current Attorney General Alberto Gonzales (then serving as White House Counsel), issued a series of still secret opinions delineating specific harsh interrogation methods approved for use by the CIA. *See* Docket Entries 66 & 91.

On November 1, 2004, Mr. Passaro moved to dismiss the indictment for lack of jurisdiction, arguing that the language and legislative history of § 7(9) – a provision of the PATRIOT ACT no court had previously interpreted – indicated Congress did not intend to assert territorial jurisdiction over a tactical outpost for Special Ops forces and CIA paramilitaries. Docket Entries 44 and 45. The government argued for an expansive definition of § 7(9), one that "would embrace any land" used by a military "entity" to provide "training or in furtherance of any other operation conducted by the occupying unit." Docket Entry 47, pp. 7-8. On August 12, 2005, the Court issued an order denying the motion and adopting the plain language interpretation proposed by the government. Docket Entry 129.

In the Spring of 2004, the same time former U.S. Attorney General Ashcroft announced the

---

[1] To facilitate the court security review, where this motion includes documents submitted in previous motions, the docket entry of that previous motion is cited.

instant prosecution in a televised press conference, the Department of Justice declined prosecution in another case involving interrogations at a much larger detention facility in Afghanistan. Dana Priest, *CIA Avoids Scrutiny of Detainee Treatment*, Wash. Post, March 3, 2005, A1. The United States government financed all operations within the 10-acre facility, operations which included U.S. military training for the Afghan counter-terrorism force. *Id.* The Department of Justice concluded the status of the complex as a "host-nation facility" defeated jurisdiction. *Id.*

Based on recent reports, except for the instant prosecution against Mr. Passaro, a contract employee, the Department of Justice will decline to prosecute any of the other cases referred to it by the CIA. Douglas Jehl and Tim Golden, *CIA is Likely to Avoid Charges in Most Prisoner Deaths*, N.Y. Times, Oct. 23, 2005, Section 1, p. 6.

## ARGUMENT

According to the Fourth Circuit, "[t]he void for vagueness doctrine requires that penal statutes define crimes so that ordinary people can understand the conduct prohibited and so that arbitrary and discriminatory enforcement is not encouraged." *United States v. McLamb*, 985 F.2d 1284, 1291 (4th Cir. 1993). Vagueness challenges to statutes which do not involve First Amendment rights are reviewed in light of the facts at hand or as the statute was applied to the defendant. *See United States v. Williams*, 364 F.3d 556 (4th Cir. 2004). Thus, a statute can be void for vagueness, not only on its face, but as applied. *United States v. Platte*, 401 F.3d 1176 (10th Cir. 2005). "In evaluating whether a statute is vague, a court must consider both whether it provides notice to the public and whether it adequately curtails arbitrary enforcement." *United States v. Klecker*, 348 F.3d 69, 71 (4th Cir. 2003) (citing *Kolender v. Lawson,* 461 U.S. 352, 357-58 (1983)) (parallel citations omitted). However, the standard of certainty is higher for statutes imposing criminal penalties. *Schleifer by Schleifer v. City of Charlottesville*, 159 F.3d 843 (4th Cir. 1998).

3

And, "ambiguities in criminal statutes must be resolved in favor of lenity for the accused." *United States v. Sheek,* 990 F.2d 150, 153 (4th Cir. 1993) (citing *United States v. Headspeth,* 852 F.2d 753 (4th Cir. 1988)).

As applied to this case, application of the assault statute, 18 U.S.C. § 113, to the conduct of a CIA interrogation of a terrorist suspect linked to rocket attacks on a tactical firebase in a combat zone violates both principles of the vagueness doctrine – curtail arbitrary enforcement and provide fair notice. The jurisdictional element, upon which the assault charges hinge, 18 U.S.C. § 7(9) renders 18 U.S.C. § 113 unconstitutionally vague as applied to CIA interrogations conducted under battlefield conditions in remote tactical firebases.

First, the provision does not adequately curtail arbitrary enforcement of 18 U.S.C. § 113 within the context of CIA interrogations conducted on foreign soil. The Department of Justice, which actually drafted 18 U.S.C. § 7(9), has inconsistently interpreted and applied its own creation, both in selecting cases for prosecution and in defining the key jurisdictional terms in the only CIA case it decides to prosecute. As noted above, the Justice Department declined to prosecute a case involving interrogations at a much larger complex based on the conclusion that the site's status as a "host-nation facility" defeated jurisdiction. This reliance on the formal status of a facility to determine the jurisdictional reach of 18 U.S.C. § 7(9) directly contradicts the expansive functional criteria the prosecution employs in the instant case to stretch jurisdiction to a remote firebase occupied and maintained by military force alone.

The government has even inconsistently interpreted 18 U.S.C. § 7(9) within this case. During the hearing on the motion to dismiss, the government asserted it did not read to reach everywhere a soldier on patrol would pitch a pup tent. This assertion contradicted the expansive definition, espoused in its brief, that § 7(9) "would embrace any land" used by a military "entity" to

4

provide "training or in furtherance of any other operation conducted by the occupying unit." Docket Entry 47, pp. 7-8.

The government's contradictory interpretation and application of 18 U.S.C. § 7(9) indicates that the government merely seeks to stretch § 7(9) as far as it takes to maintain the instant prosecution for assault. Thus, as applied to the instant prosecution, the assault statute, 18 U.S.C. § 113, does not adequately curtail arbitrary enforcement.

Second, application of the "fair notice" principle especially applies to this case, in light of the position expressed by Attorney General Alberto Gonzales during his confirmation proceedings in January of 2005. In his responses to written questions posed by Senator Patrick Leahy after his confirmation hearing, General Gonzales confirmed what a careful reading of the President's February 7, 2002 "humane treatment" directive revealed – it did not "apply to the CIA or any other non-military personnel." Docket Entry 91, Attach. 1. General Gonzales went on to state that the CIA would nonetheless be bound by the prohibition on torture contained in 18 U.S.C. §§2340, 2340A, which codified America's obligation as a signatory to the Convention Against Torture. Attach. 1. That statute was the subject of the August 1, 2002 Memorandum issued by Judge Jay Bybee, then head of the Department of Justice's Office of Legal Counsel ("OLC"), a memorandum which defined the statutory term "torture" as "severe pain . . . of an intensity akin to that which accompanies serious physical injury such as death or organ failure." Docket Entry 66, Attach. 5, p. 46.

Mr. Gonzales also stated, "Depending on the circumstances, they are bound by other criminal statutes as well, such as those defining crimes in the special maritime and territorial jurisdiction of the United States. . . . In fact, the Department of Justice is currently prosecuting a CIA contract employee for various charges of assault under 18 U.S.C. § 113. *See United States v.*

*Passaro*, No. 5:04-CR-211-1 (E.D.N.C.)." Docket Entry 91, Attach. 1.

Given his familiarity with the instant prosecution, the above answers indicate that General Gonzales' position is this: He would not prosecute Mr. Passaro for any acts which do not constitute "torture" as defined in the OLC Opinion, so long as he interrogated the terrorist suspect far from the mud-walled compound of the Asadabad firebase, which the government contends qualifies as within the "special territorial jurisdiction" of the United States. However, the decision to interrogate a terrorist suspect within the compound (at least free from the ambushes and improvised explosive devices, if not from rocket attacks, Docket Entry 66, Attach. 6), would expose Mr. Passaro to prosecution for even negligently causing the terrorist suspect to experience a reasonable apprehension of harm. *See United States v. Guilbert*, 692 F.2d 1340, 1343 (11th Cir. 1982) (as used in 18 U.S.C. § 113, "assault" incorporates a tortious assault).

Essentially, General Gonzales told the Senate that he would not prosecute a CIA paramilitary for any acts which fall below the OLC's torture standard, so long as the interrogation takes place outside the special maritime and territorial jurisdiction of the United States. Docket Entry 91. Within such a federal enclave, however, General Gonzales stands ready to prosecute a warrior of the Commander-in-Chief for any action employed in the battlefield interrogation of a suspected terrorist, where such actions constitute an "assault," including negligently creating a reasonable apprehension of fear. *Id.*

The standard of law during the time Mr. Passaro conducted his interrogation of the terrorist suspect, according to General Gonzales' later explanations and the government's position defining special maritime jurisdiction, would have permitted Mr. Passaro to interrogate Abdul Wali by any means less than torture, so long as the site was just beyond the mud walls, or in the mountains overlooking the Asadabad firebase, among the hideouts of Al Qaeda, the Taliban, and regional

6

warlords. Virtually any battlefield commander would find such a tactical choice absurd. Moreover, General Gonzales apparently believes 18 U.S.C. § 7(9) provided Mr. Passaro with "fair notice" of where the torture standard applied to interrogations and where the tort-based assault standard would apply. Again, in light of the fact that General Gonzales' own department has inconsistently interpreted its own jurisdictional provision, such a belief is equally absurd.

## CONCLUSION

For the foregoing reasons, this Court should dismiss the indictment as unconstitutionally vague as applied against Mr. Passaro.

Respectfully submitted this 27th day of December, 2005.

Thomas P. McNamara

THOMAS P. McNAMARA
Federal Public Defender
N.C. State Bar No. 5099

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was served upon:

JAMES A. CANDELMO
Assistant United States Attorney
Suite 800, Federal Building
310 New Bern Avenue
Raleigh, NC 27601-1461

by hand delivering to Jennifer Myers, United States District Court Clerk, for courier pick-up by the United States Attorneys Office with a copy of the foregoing sent via secure facsimile to the Court Security Officer for classification review on,

This the 27th day of December, 2005.

Thomas P. McNamara
THOMAS P. McNAMARA
Federal Public Defender
N.C. State Bar No. 5099