FILED WITH
COURT SECURITY OFFICER
1/17/06 [signature]
DATE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

CASE NO. 5:04-CR-211-BO(1)

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) |
| DAVID A. PASSARO, | ) |
| | ) |
| DEFENDANT. | ) |

GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO
DISMISS INDICTMENT FOR SELECTIVE PROSECUTION

The United States of America (hereinafter "the government"), by and through the United States Attorney for the Eastern District of North Carolina, respectfully files this response in opposition to defendant's above-styled motion. The government would show as follows:

**BACKGROUND**

1. Defendant moves to dismiss the pending indictment on the grounds that he, allegedly, has been singled out invidiously by the government for prosecution when other Central Intelligence Agency ("CIA") employees who are similarly situated have not been so prosecuted. He claims that the government's motive in doing so is to provide "political coverage" for the Department of Justice ("DOJ") to avoid accountability for its alleged role in authorizing harsh interrogation techniques of terrorist detainees by CIA

Unclassified

employees.

2.  As evidentiary support for his motion defendant offers the Court a potpourri of media stories discussing the DOJ's supposed role in authorizing harsh interrogation techniques, and its investigations into deaths of other detained terrorist suspects by CIA personnel. Defendant provides no statistical studies of such investigations that resulted in prosecutions compared to ones that did not. Nor does he offer any affidavits of persons claiming personal knowledge of DOJ's alleged role, or the government's supposed motive in prosecuting defendant.

3.  The defendant's evidentiary support for his selective prosecution claim is incompetent, specious, and unreliable. His theory that he was selected for a "token" prosecution in order to provide "political coverage" to the DOJ is a figment of his fevered imagination. His motion to dismiss should be summarily rejected, and denied in its entirety.

### ARGUMENT

4.  In order to prevail on a selective prosecution claim, a defendant must overcome the heavy burden of showing both "that the federal prosecutorial policy 'had a discriminatory effect and that it was motivated by a discriminatory purpose.'" United States v. Armstrong, 517 U.S. 456, 465 (1996) (quoting Wayte v. United States, 470 U.S. 598, 608 (1985)). "Significantly, claims of selective prosecution are not easily established." United States

2

v. John Walker Lindh, 212 F.Supp2d 541, 565 (E.D.VA 2002). The Constitution vests the executive branch with "broad discretion" to enforce federal criminal laws, Armstrong, 517 U.S. at 464 (citations omitted); see U.S. Const., Art. II, §3 (President charged with taking "Care that the Laws be faithfully executed"). Accordingly, the prosecutorial decisions of the President, the Attorney General and the United States Attorneys (the President's statutorily designated delegates) are entitled to a "presumption of regularity." Armstrong, 517 U.S. at 464. "[I]n the absence of clear evidence to the contrary, courts presume that they have properly discharged their duties." Id. (quoting United States v. Chemical Foundation, Inc., 272 U.S. 1, 14-15 (1926)).

5. A claim of selective prosecution "asks a court to exercise judicial power over a 'special province' of the Executive." United States v. Armstrong, 116 S. Ct. 1480, 1486 (1996). Prosecutors retain broad discretion in the enforcement of the criminal laws. Id. "[S]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." Bordenkircher. v. Hayes, 434 U.S. 357, 364 (1978); accord United States v. Armstrong, 116 S. Ct. at 1486; Wayte v. United States, 470 U.S. 598, 607 (1985) (quoting Bordenkircher); see also Town of Newton v. Rumery, 480 U.S. 386,

396 (1987) (opinion of Powell, Jr.); United States v. Goodwin, 457 U.S. 368, 380 n.11 (1982); Marshall v. Jerrico, Inc., 446 U.S. 238, 248 (1980); United States v. Batchelder, 442 U.S. 114, 124 (1979). This principle is founded on several important considerations.

6. First, prosecutorial discretion is a core element of the Executive's constitutional power to "take care that the Laws be faithfully executed." U.S. Const. Art. II, §3. See Heckler v. Chaney, 470 U.S. 821, 832 (1985); United States v. Armstrong, 116 S. Ct. at 1486; United States v. Nixon, 418 U.S. 683, 694 (1974). Separation-of-powers principles therefore constrain judicial review of prosecutorial decisions. Second, "the decision to prosecute is particularly ill-suited to judicial review." Wayte, 470 U.S. at 607. The factors that the government must consider in deciding to prosecute, such as the government's enforcement priorities, the general deterrence value, and the strength of the case, "are not readily susceptible to the kind of analysis the courts are competent to undertake." Id. at 607; United States v. Armstrong, 116 S. Ct. at 1486. Third, judicial review of prosecutorial decision making "threatens to chill law enforcement by subjecting the prosecutor's motives and decision making to outside inquiry, and may undermine prosecutorial effectiveness by revealing the Government's enforcement policy." Wayte, 470 U.S. at 607.

7. Finally, judicial scrutiny of a prosecutor's charging decisions imposes high costs on the criminal justice system. The

purpose of a criminal proceeding is to determine a defendant's guilt or innocence, and examination of the prosecutor's reasons for bringing a prosecution diverts the proceeding from that central issue, resulting in delay that can be "fatal to the vindication of the criminal law." Cobbledick v. United States, 309 U.S. 323, 325 (1940). See also DiBella v. United States, 369 U.S. 121, 126 (1962). Those factors "make the courts properly hesitant to examine the decision whether to prosecute." Wayte, 470 U.S. at 608.

8. The Constitution, of course, provides some limitations on the Executive Branch's broad prosecutorial discretion. The only limitation relevant to defendant Passaro's motion is the Due Process Clause of the Fifth Amendment, which has been interpreted to prohibit the federal government from denying any person the equal protection of the laws. Bolling v. Sharpe, 347 U.S. 497, 500 (1954). Under this principle, the Supreme Court has held that "the decision whether to prosecute may not be based on 'an unjustifiable standard such as race, religion, or other arbitrary classification.'" Armstrong, 517 U.S. at 464 (quoting Oyler v. Boles, 368 U.S. 448, 456 (1962)). A claim of selective prosecution "is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." Armstrong, 517 U.S. at 463. However, "the conscious exercise of some selectivity in

enforcement is not in itself a federal constitutional violation." Oyler v. Boles, 368 U.S. 448 456, 82 S. Ct. 501 (1962).

9. A defendant claiming that he has been selected for prosecution on an impermissible basis faces an uphill battle. See generally Marc Michael, Note, United States v. Armstrong; Selective Prosecution-A Futile Defense and Its Arduous Standard of Discovery, 47 Cath. U. L. Rev. 675 (1998). To overcome the presumption of regularity that attaches to the prosecutorial decisions of the government and establish a prima facie case of impermissibly selective prosecution, the defendant must show both "discriminatory effect" and "discriminatory purpose." Armstrong at 465.

Because of the special considerations implicated by judicial inquiry into an exercise of prosecutorial discretion, those two elements of the claim -- discriminatory effect and discriminatory motive -- must be satisfied by "exceptionally clear proof." McCleskey v. Kemp, 481 U.S. 279, 297 (1987) ("Because discretion is essential to the criminal justice process, we would demand exceptionally clear proof before we would infer that the discretion has been abused.").

10. To even obtain discovery -- relief that the defendant has not sought -- the defendant must meet a "correspondingly rigorous standard." Armstrong at 468. Specifically, the defendant must produce "some evidence tending to show the existence of the essential elements of the defense." Id. (quoting United States v.

Berrios, 501 F.2d 1207, 1211 (2d Cir. 1974). This evidentiary threshold is "intended to be 'a significant barrier to the litigation of insubstantial claims,'" United States v. Hastings, 126 F.3d 310, 314 (4th Cir. 1997) (quoting Armstrong, 517 U.S. at 463-64), because "discovery 'imposes many of the costs present when the Government must respond to a prima facie case of selective prosecution,'" Olvis, 97 F.3d at 743 (quoting Armstrong, 517 U.S. at 468). As set forth below, defendant Passaro has failed both to demonstrate the essential elements of a selective-prosecution claim or even to meet the rigorous evidentiary standard for obtaining discovery on such a claim.

11. Defendant Passaro's first hurdle is to present the Court with reliable evidence from which the court can determine whether the two essential elements of a selectivity claim have been made out. Defendant has abysmally failed to clear this initial hurdle.

12. The media reports on which he relies are incompetent evidence to support his claims. They consist of second hand hearsay from anonymous sources. The Supreme Court in Armstrong found insufficient defense evidence better than that, the affidavits of attorneys who were personally knowledgeable about drug prosecutions, saying that the affidavits "recounted hearsay and reported personal conclusions based on anecdotal evidence." Armstrong, id., at 470; United States v. Hastings, 126 F.3d at 310, 314 (4th Cir. 1997) ("it is necessary for us to find that Hastings

7

offered credible evidence to prove each of the two prongs"); <u>United States v. Westmorland</u>, 122 F.3d 431, 434 (7th Cir. 1997) (a defendant must come forward with "probative" evidence before discovery allowed); <u>United States v. Fares</u>, 978 F.2d 52, 59 (2nd Cir. 1992) ("Mere assertions and generalized proffers on information and belief are insufficient."); <u>United States v. White</u>, 972 F.2d 16, 19 (2nd Cir. 1992) (conclusory allegations as to timing of indictment, government's failure to follow internal guidelines and improprieties of prosecutors not "objective evidence" warranting discovery); <u>United States v. Moon</u>, 718 F.2d 1210, 1230 (2nd Cir. 1983) ("to engage in a collateral enterprise respecting prosecutorial motive, there must be more than mere suspicion or surmise").

13. Assuming <u>arguendo</u>, that defendant's media reports should be given some minimal consideration, they still fail to provide any real support for his claims. In his motion defendant relies for his claim that other similarly situated CIA officers will not be prosecuted on the New York Times article of October 23, 2005, entitled "*CIA to Avoid Charges In Most Prisoner Deaths.*" But despite the attention-grabbing headline, the article does not state categorically that CIA employees will or have escaped prosecution. The very first sentence of the article reads, "Despite indications of CIA involvement in the deaths of at least four prisoners in Iraq and Afghanistan, CIA employees now appear **likely** to escape criminal

charges in all but one of those incidents, according to current and former intelligence and law enforcement officials." (Emphasis added).

14. The use of such qualifying language as "likely", in the above article, constitutes a mere prediction of a future event, not an assertion of fact. Similar qualifying language in an attorney's affidavit submitted in support of a selective prosecution claim in United States v. Hommosany, 208 F.3d 204 at **3, 2000 WL 254050 (unpublished opinion) (2nd Cir. 2002), was criticized for the same defect. That affidavit used language, such as, "it *appears* that (the government) pursued criminal indictments when the ... judge presiding over (defendant's) case began to express doubts ...."; and, "it is *likely* that he communicated that to the INS" and, "that *may* have led to the criminal charges in this case"; and the evidence "*suggests* that the government targeted (Hommosany)" (emphasis in the original). The appellate court declared that defendant Hommosany by this affidavit had not offered "objective evidence", citing White, 972 F.2d at 19, and Armstrong, 517 U.S. at 470; see also, United States v. Ramos, 1998 WL 155932, at *5 (N.D. Ill. 1998) (unpublished opinion)(court condemns use of "rumor" and "mere speculation" to establish that defendant was singled out due to his race).

15. Even defendant Passaro's motion to dismiss contains the same wiggle words. He argues that, "He (Passaro) is the only CIA

9

person being prosecuted and *likely* will remain the only one prosecuted." (Defendant's motion at 11) (emphasis added). The use of the qualifying word "likely" above, signals defendant's failure to submit "objective evidence" that he has been singled out for a "token" prosecution.

16. His "evidence" also undercuts his claim that he is "similarly situated" as other CIA officers who have not been prosecuted for committing identical crimes as he is charged with committing. First, the New York Times article, referenced above, states that one of the detainee-death investigations involves a CIA contract worker. The articles states that,

> A third episode studied within the C.I.A. involves a former Iraqi general who died of asphyxiation after being stuffed head-first into a sleeping bag at the base at an American base (sic) in Al Asad, in western Iraq on November 26, 2003, after several days of interrogation. The questioning involved beatings by a group that included at least one C.I.A. contract worker. One official said that case was never referred to the Justice Department for prosecution.

17. In the same article the New York Times reported on another detainee-death investigation that also included another CIA contract employee. The Times reported that:

> Former intelligence officials have said that questions remain about the role of a C.I.A. officer and a contract interrogator who had taken custody of Mr. Jamadi and were questioning him in the shower room at Abu Ghraib when he died. Mr. Jamadi was found with his hands bound behind his back and shackled to a barred window. Mr. Jamadi had not been examined by a physician when he was brought to Abu Ghraib, because C.I.A. officers had circumvented normal procedures of registering his presence as a prisoner.

10

18. Defendant's own "evidence", therefore, contradicts his claim that only full time CIA officers are immune from prosecution, and not contract part-time employees, such as himself.

19. Another of the detainee-death investigations cited in his "evidence" also does not support his claim. The same New York Times article reported that,

> "But in another case, involving the hypothermia death of an Afghan at a C.I.A. run detention center called the Salt Pit in Afghanistan in November 2002, the Justice Department has signaled that it does not intend to bring charges .... In the case from Afghanistan from 2002, a young C.I.A. officer who ran the detention center had ordered that the prisoner be left out in the cold, one intelligence official said, confirming the accounts in The Washington Post. The prisoner was stripped and dragged outside by Afghan guards at what was technically an Afghan-run detention center, they said.
>
> The intelligence official described the death as a case of "negligent homicide," but said the legal culpability of the C.I.A. officer who ran the center was less clear-cut, because there was no way to prove that Afghan guards had not abused the prisoner during the night."

20. The information above refers to a detainee's death by a different manner and means than that charged against defendant Passaro. There is a vast difference between a "negligent homicide" caused by exposure to the elements, and an intentional assault with fist, foot, and flashlight, resulting in serious bodily injury, as charged in this indictment.

21. Defendant's "evidence" fails to show by clear and convincing evidence that he has met the requirement of the first prong of the Armstrong test, that of showing a "discriminatory

11

effect." His "statistics," if they can generously be called that, of similarly situated cases and/or suspects, is so small that it does not make out any kind of discernable pattern, trend, or practice. It certainly does not meet the standard expressed in his cited case, United States v. Robinson, 311 F. Supp 1063 (W.D. Missouri, 1969), where a district court found that a particular government action "represented a systematic fixed and continuous policy of unjust discrimination." Robinson, id., at 1066; see also United States v. Turner, 104 F.3d 1180, 1185 (9th Cir. 1997) (statistical study of 43 persons charged federally with crack cocaine offenses described as "statistically unimpressive").

22. Defendant's "evidence" likewise fails to meet the requirement of the second prong of the Armstrong test, that of showing "discriminatory motive." To prove this prong, defendant must prove "that the decision to prosecute was invidious and in bad faith". Olvis, id., at 743. The kind of evil intent to be proved is that the government undertook a particular course of action "at least in part 'because of, not merely in spite of' its adverse effects upon an identifiable group." Turner, 104 F.3d at 1184, quoting Wayte, 470 U.S. at 610.

12

812 F.2d 161, 163 (4th Cir. 1987) (defendant "made no showing that the arresting officer had in any way influenced the United States Attorney who actually made the decision to prosecute").

25. In sum defendant Passaro has failed to prove either "discriminatory effect" or "discriminatory intent," as required by Armstrong. He therefore fails to offer sufficient proof that overcomes the "presumption of regularity" that cloaks the government's prosecution of this case.

WHEREFORE, for all of the above good and sufficient reasons, the government respectfully urges the Court to deny defendant's motion to dismiss the indictment for selective prosecution.

Respectfully submitted this _12th_ of January, 2006, by filing via hand delivery, pursuant to the Protective Order, Under Seal with the Court Security Officer.

Respectfully Submitted,

FRANK D. WHITNEY
UNITED STATES ATTORNEY

By: _James A. Candelmo_
JAMES A. CANDELMO
Assistant United States Attorney

14

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was served upon:

Thomas P. McNamara
Office of the Federal Public Defender
Raleigh, North Carolina

by hand delivery to the Court Security Officer for distribution to the parties and classification review.

This the 12th day of January, 2006.

*James A. Candelmo*
JAMES A. CANDELMO
Assistant United States Attorney