UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION



NO: 5:04-CR-211-1BO

| | |
|---|---|
| UNITED STATES AMERICA | ) |
| | ) |
| v. | ) |
| | ) |
| DAVID A. PASSARO | ) |
| | ) |

**REPLY OF THE UNITED STATES TO DEFENDANT'S OPPOSITION
TO MOTION TO ADMIT EVIDENCE UNDER FED. R. EVID. 404(b)**

1. One March 9, 2006, the government filed with this Court a "Notice of Intent to Introduce Evidence of Prior Mosconduct and a Motion *In Limine* For Leave to Introduce Such Evidence." As explained in that Motion, the evidence at issue involves systematic acts of brutality the defendant visited upon his step-son, Matthew Michael Newman, beginning shortly after the defendant's marriage to his mother in 1988 when Matthew was eight years old, and continuing until through 1995. The beatings were sadistic; calculated to maximize the infliction of pain while minimizing the evidence of physical injury; and were accompanied by Passaro's boasts to Matthew that he was an experienced interrogator who knew how to accomplish both the foregoing objectives. The government has proffered such evidence for the purpose of establishing that: Passaro possessed the specific intent to inflict bodily harm upon

1

his victim, Abdul Wali, as 18 U.S.C. § 113(a)(3) requires; that he possessed knowledge as to how to inflict injury while concealing the physical indicia thereof; and to rebut his anticipated defense that any injuries he inflicted upon Wali, were the accidental and unintended consequence of efforts to comply with instructions from superiors in conducting the interrogation.

2. Although, under the law of this Circuit, Rule 404(b) is one of inclusion (United States v. Mohr, 318 F.3d 613, 617 (4th Cir. 2003), Passaro now maintains that such evidence should nonetheless be excluded because its prejudicial impact outweighs its probative value. Paramount among Passaro's arguments is that, assuming the truth of his step-son's allegations of repetitive acts of abuse, such occurrences (which Passaro mistakenly claims occurred 20 years ago) are so stale that they should be excluded. See "Response to the Government's Request To Introduce Alleged Uncharged Misconduct Evidence" para. 5. In the context of these facts, the argument is without merit.

While, in some cases, the probative value of prior acts evidence diminishes with the passage of time (see United States v. Rodriguez, 215 F.3d 110, 120 (2d Cir. 2000)), "[t]he age of a prior [bad act] has never been held to be a per se bar to its use under Rule 404." United States v. Hernandez-Guevara, 162 F.3d 863, 872 (5th Cir. 1998). Rather, the judgment whether to admit or to exclude such evidence on the basis of its age, rests within the

2

sound discretion of the trial judge on the basis of the facts of each case, and in view of the purpose for which such evidence is being introduced. Rodriguez, 215 F. 3d at 121; see United States v. Engleman, 648 F.2d 473, 478 (8th Cir. 1981). From the authorities that have addressed similar staleness claims – some involving substantially longer lapses of time than is at issue here – several broad principles governing the exercise of such discretion have developed.

First, "the answer as to how long is too long [to admit evidence of prior bad acts] depends on the theory that makes the evidence admissible." United States v. Strong, 415 F.3d 902, 905 (8th Cir. 2005). Pertinent to this case, the probative value of such evidence is not substantially diminished by the passage of time where it is relevant to the defendant's knowledge, his intent, or the refutation of a claim of accident or innocent behavior. Strong, 415 F.3d at 905; See, e.g., Hernandez-Guevara, 162 F.3d at 872; United States v. Terry, 702 F.2d 299, 315 (2d Cir. 1983) (proper to admit evidence of 20 year old prior narcotics conviction on the issues of intent and guilty knowledge to rebut defendant's claims that taped conversations involved gambling and not narcotics); see also Engleman, 648 F.2d at 479 (because "stale" evidence of the defendant's participation in a murder bore on a relevant issue – intent – and was clear and convincing, it was properly admitted). As one commentator has explained, the

rationale for such cases is that the probative value of evidence of prior conduct tending to demonstrate knowledge or intent does not degrade as readily with the passage of time as prior acts evidence offered for other purposes, such as acts demonstrating the defendant's prior hostility toward the victim. See II E. Imwinkelreid, Uncharged Misconduct Evidence § 8.08 at 27 (2006 rev.).

Second, the greater similarity between the charged offense and the prior incident, the less significant a lapse of time between the two becomes for the purpose of determining admissibility under Rule 404(b). See Rodriguez, 215 F.3d at 121 ("[t]he similarity of the prior crimes is a factor tending to support admissibility"); Hernandez-Guevara, 162 F.3d at 873 ("[w]e have held that a fifteen year old conviction for the same type of crime as that for which the defendant is currently on trial is admissible to show intent"); United States v. Drew, 894 F.2d 965, 970 (8th Cir. 1990) (the time factor is less important where the charged crime and the prior offense are similar); Engleman, 648 F.2d at 479 (noting that charged offense and prior act, subject to a claim of staleness, were reasonably similar). Finally, in resolving remoteness challenges, the courts consider whether the incidents at issue are isolated or whether there is a continuous pattern of misconduct. See II E. Imwinkelreid, Uncharged Misconduct Evidence § 8.08 at 27, citing United States v. McCarthy,

4

97 F.3d 1562, 1573 (8th Cir. 1996).[1]

The application of these principles, have led the courts of appeals to hold that trial judges have acted well within their discretion in admitting prior acts evidence where the lapse of time between the prior act and the charged offense was greater than the lapse of time at issue here - which involved a ten year span between Newman's departure from Passaro's household and the charged offenses. For example, in Strong the court of appeals approved the introduction of prior bad acts evidence, introduced to demonstrate knowledge and intent despite a 16 year lapse between the prior act (resulting in a conviction) and the charged offense. In Rodriguez, 215 F.3d at 121, the court of appeals approved the admission of the defendant's participation in a prior drug smuggling scheme that occurred 13 years before the charged drug conspiracy offense. See id. at 120 note 12 (collecting cases). In Hernandez-Guevara, 162 F.3d at 873, the court of appeals approved the introduction of an 18 year old conviction "to shed light on [the defendant's] intent" where such evidence involved the same type of misconduct. And, in McCarthy, the court of appeals approved

---

[1] Conversely, as the court observed in Rodriguez, 215 F.3d at 120 n. 11, the passage of time operates to attenuate the power of any impermissible suggestion of "propensity to commit a crime." The older the evidence that the defendant was of bad character the weaker the force of the inference about his present character or propensity. Thus, in this sense, the passage of time militates in favor of the introduction of an act or acts of prior misconduct.

5

the admission of 10 or 11 year old prior bad act evidence where the prior offense involved "continuous similar conduct." See also Terry, 702 F.2d at 316 (admitting 20 year old prior conviction as probative "on the issue of intent and guilty knowledge"); Engleman, 648 F.2d at 479 (13 year lapse).

The same analysis, strongly militates in favor the admission of Passaro's acts of child abuse toward his step-son despite their apparent termination in 1995, some eight years prior to the charged assault offenses in 2003. As explained in greater detail in our preceding Motion *In Limine*, the purpose of the introduction of such statements is to demonstrate that Passaro possessed the knowledge and skill to inflict injury upon a victim during interrogation without leaving visible signs of injury; that he intentionally and purposefully employed such knowledge and that he therefore possessed a full awareness of what he was doing when he assaulted Wali while questioning him and fully intended to injury him. Each of these facts is crucial to the government's ability to satisfy its burden of proof with respect to the scienter element of the aggravated assault counts. And, by the same token, as in the cases cited above, the lapse of time is not likely to degrade the probative value of evidence demonstrating Passaro's claimed knowledge and willingness to demonstrate its application.

Similarly, except for their different geographic settings and victims, Passaro's acts of abuse toward his step-son and Wali,

6

bore uncanny similarity. Both occurred in a context that Passaro perceived as "interrogation," involving the extraction of information from an unwilling subject. Both involved the use of a flashlight or a similar instrument -- such as a cloth-covered baton - to inflict pain as the means of extracting the information sought. And both involved efforts to maximize the infliction of pain by such means while minimizing the physical indicia of injury.[2] Finally, Passaro's prior acts of abuse were not inadvertent, one-shot affairs that would tend to lose probative value by virtue of remoteness and are readily subject to rejection by the likelihood of immaturity or inadvertence. Rather, as explained, they involved systematic, calculated acts of abuse that recurred for a period that spanned seven years and terminated only when Newman was old enough to report the abuse and formal custody was changed as a result in June of 1995.

3. Passaro's Opposition contains several additional argument that merit brief response. First, he maintains that the proffered evidence of his abuse of Newman is likely the result of a bitter dispute over alimony between his former wife (Newman's mother) and himself that occurred several years ago. See Opposition, paras. 4, 8. But that matter has no bearing upon the credibility of Newman, himself, who was an adult at the time of the alleged alimony dispute, and Passaro has proffered no evidence tending to

---

[2] Here note lack of bruising or other marks on Wali's body.

7

demonstrate that he had participated in the dispute. In any event, the question of credibility has little bearing upon whether the prior bad acts evidence is *admissible* under Rule 404(b). Rather, Newman's possible bias as a result of the dispute is a matter to be developed during cross-examination and considered by a properly instructed jury.

Passaro also argues that the government has failed to provide him sufficient notice to investigate and rebut the proffered evidence of abuse and that, in any event, it is sufficiently remote in time that rebuttal on the basis of court records or other official documents may be difficult because such records "*may* have long been destroyed." See Opposition, paras. 11-12. Aside from the fact that Passaro has cited no authority for the proposition that such difficulties, themselves, constitute a basis for excluding evidence of prior misconduct under Fed. R. Evid. 403, his argument appears to be predicated upon rank speculation. Passaro has made no effort whatsoever to demonstrate that he has actually attempted to obtain such rebuttal evidence; that he has been unsuccessful in such attempts; or that any such records have, in fact, been destroyed. Of course, Passaro can testify that the acts of child abuse never occurred and – if he is correct that the records of child custody proceedings involving himself and his former wife lack any allegations of abuse – he is free to present such evidence to bolster his refutation.

Passaro further argues that the government's real purpose in seeking the introduction of his prior acts of child abuse is "to buttress otherwise weak evidence" by suggesting that he acted in conformity with the manner in which he acted some 20 years before.[3] Opposition, para. 9. As we have explained, however, the government undeniably has a difficult burden in demonstrating, as required by 18 U.S.C. § 113(a)(3), that Passaro acted with the specific intent to inflict serious bodily harm upon Wali. The use of evidence of prior misconduct to establish the requisite intent constitutes what is likely the most common and well recognized justification for the admission of such evidence.

Finally, Passaro urges that the danger of unfair prejudice resulting from the government's introduction of evidence portraying him as a child abuser "cannot be overstated." Opposition, para. 7. But as the authorities we have cited earlier recognize, that potential is subject to amelioration by timely instructions to the jury as to the purposes for which evidence of prior bad acts can be considered.

## CONCLUSION

For the foregoing reasons and those set out in our Motion *In*

---

[3] This is further evidence of Defendant's lack of comprehension of the facts underlying the government's motion. The government has alleged that the beatings began approximately 20 years ago (actually 18 years to be precise) and continued until 1995, some 11 years ago. Subjecting the boy to multiple beatings, spanning over seven years.

*Limine* the proffered evidence of the defendant's prior acts of misconduct should be admitted under Fed. R. 404(b).

Respectfully submitted this 21st day of April, 2006.

FRANK D. WHITNEY
United States Attorney

BY: JAMES A. CANDELMO
Assistant U.S. Attorney

CERTIFICATE OF SERVICE

This is to certify that I have this 21st day of April, 2006, served a copy of the foregoing **REPLY OF THE UNITED STATES TO DEFENDANT'S OPPOSITION TO MOTION TO ADMIT EVIDENCE UNDER FED. R. EVID. 404(b)** in this action via courier as follows:

Thomas P. McNamara, Esq.
Federal Public Defender's Office
Raleigh, North Carolina

JAMES A. CANDELMO
Assistant United States Attorney
Criminal Division