CONTAINS REDACTED PAGES

NOV.16.1999 11:07PM    FPD RALEIGH



UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:04-CR-211-BO(1)

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DAVID A. PASSARO | DEFENDANT'S OBJECTIONS TO AND REQUEST FOR RECONSIDERATION OF COURT'S WRITTEN ORDER FILED UNDER SEAL ON JUNE 26, 2006 (CIPA-6 ORDER) |

DAVID A. PASSARO, defendant in the above-captioned case, by and through counsel, hereby submits this request to reconsider the below paragraphs of its CIPA-6 Order, pursuant to 18 U.S.C.S. Appx § 6 (d).

## BACKGROUND

While state and federal rulemakers "have broad latitude under the Constitution to establish rules excluding evidence from criminal trials," *Chambers v. Mississippi*, 410 U.S. 284 (1973), the United States Supreme Court in May, 2006 reaffirmed that "[t]his latitude, however, has limits. *Holmes v. South Carolina*, ___ U.S. ___, 126 S.Ct. 1727 (2006). Justice Alito, speaking for a unanimous court, pointed out that "the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Holmes*, 126 S.Ct. at 1731. The court added, "This right is abridged by evidence rules that 'infring[e] upon a weighty interest of the accused' and are 'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" *Ibid.*

1



The Classified Information Procedures Act (CIPA) requires a court to balance the government's claimed risk of damage to national security against a defendant's right to present a meaningful defense. The right to a fair trial requires the admission of classified information that is "helpful to the defense of an accused, or is essential to a fair determination of a cause." *United States v. Fernandez*, 913 F.2d 148, 154 (4th Cir. 1990). "Although CIPA contemplates that the use of classified information be streamlined, courts must not be remiss in protecting a defendant's right to a full and meaningful presentation of his claim to innocence." *Ibid*.

CIPA further provides in section 6 that the Court shall set forth in writing the basis for its determination as to the use, relevance, or admissibility of classified information that would otherwise be made during trial. This Court issued its written order, filed and received by undersigned counsel, on June 26, 2006. Counsel notes continuing objections to the below listed paragraphs, and requests that the Court reconsider its order with respect to those objectionable paragraphs.

PARAGRAPH NUMBERS, OBJECTIONS, AND REASONS TO RECONSIDER

Paragraph 16. Defendant maintains that substituting a ▮▮▮▮▮ for a ▮▮▮▮▮ deprives him of the right and ability to make his defense, and misstates the evidence such that it will confuse the jury. ▮▮▮▮▮

2



This information is critical to the defense, and the Court's order fails to provide the basis for determining that national security interests outweigh Mr. Passaro's right to present a meaningful defense. Mr. Passaro

objects that this ruling denies his Constitutional rights, including due process, the right to present evidence, the right to compulsory process, the right to effective representation by counsel, the right to confront and cross-examine witnesses, and the right to a fair jury trial.

**Paragraph 17.** Substituting ▓▓▓▓▓ for ▓▓▓▓▓ ▓▓▓▓▓ deprives him of the right and ability to make his defense, and misstates the evidence such that it will confuse the jury, for the same reasoning as the objection to paragraph 16, above. This information is critical to the defense, and the Court's order fails to provide the basis for determining that national security interests outweigh Mr. Passaro's right to present a meaningful defense. Mr. Passaro objects that this ruling denies his Constitutional rights, including due process, the right to present evidence, the right to compulsory process, the right to effective representation by counsel, the right to confront and cross-examine witnesses, and the right to a fair jury trial.

**Paragraph 18.** The substitution does not accurately convey the information proffered, thus depriving Mr. Passaro of the right and ability to make a defense, and will confuse the jury as to the actual facts, for the same reasoning as the objection to paragraphs 16 and 17, above. Moreover, Mr. Passaro was contracted to ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ This information is critical to the defense, and the Court's order fails to provide the basis for determining that national security interests outweigh Mr. Passaro's right to present a

4

meaningful defense. Mr. Passaro objects that this ruling denies his Constitutional rights, including due process, the right to present evidence, the right to compulsory process, the right to effective representation by counsel, the right to confront and cross-examine witnesses, and the right to a fair jury trial.

**Paragraph 19.** Defendant objects that this statement of the order fails to adequately provide the basis for the Court's ruling. Moreover, Mr. Passaro's state of mind will be a central issue for the jury to consider as it weighs the reasonableness of his actions while he was in the presence of Abdul Wali. His state of mind resulted from the sum total of his experience, training, and information he received about Wali and his terrorist activities. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ This information is critical to the defense, and the Court's order fails to provide the basis for determining that national security interests outweigh Mr. Passaro's right to present a meaningful defense. Mr. Passaro objects that this ruling denies his Constitutional rights, including due process, the right to present evidence, the right to compulsory process, the right to effective representation by counsel, the right to confront and cross-examine witnesses, and the right to a fair jury trial.

**Paragraphs 20 through 22, 24, 26, 40, 41.** Mr. Passaro raises the same objections to this ruling as he raised for paragraph 19, above.

**Paragraphs 66-77.** Mr. Passaro seeks reconsideration of the determination to sustain the government's objections to this evidence as irrelevant and inadmissible, on the following

three grounds.

First, this determination does not comport with the Court's announcement at the CIPA-6 Hearing that the Court would not admit the evidence "at this time," and that admissibility remained a "potential issue." <u>Transcript of CIPA-6 Hearing</u>, page 92. The CIPA-6 Order also contradicts the Court's January 31, 2006 Order, which denied the government's *motion in limine* to exclude the public authority defense. That Order reasoned it would be "premature" to exclude the defense because, "in order to fairly evaluate whether the facts in this case warrant a public authority defense, the Court must hear the proof at trial." Jan. 31, 2006 Order, page 2.

Second, the written conclusion of irrelevancy relies on a misstatement of the "actual authority" component of the public authority defense. Mr. Passaro agrees with this Court that the validity of the defense depends upon whether Mr. Passaro's supervisors "had the **authority to empower** the defendant to perform the acts in question." January 31, 2006 Order Denying Government's Motion in Limine, citing *United States v. Fulcher*, 250 F.3d 244, 253 (4th Cir. 2001)(emphasis added). In cases involving the CIA, the CIA official relied upon by a CIA operative, need not possess the authority to sanction the charged conduct, so long as that authority existed within the CIA and the CIA official had authority to communicate that decision to the operative. *See* cases cited in Supplemental Memorandum of Law on the Public Authority Defense at pp. 5-8, filed March 2, 2006, Moreover, under theories of principal/agency law, if the CIA condoned or ratified actions by [REDACTED] in Afghanistan, using interrogation methods akin to the charged

6

misconduct, that satisfies the actual authority component of the public authority defense. *United States v. Fulcher*, 188 F.Supp. 2d 627, 635-36 (W.D. Va. 2002) (*on remand*, 250 F.3d 244). The government has refused to provide Mr. Passaro's requested discovery of the methods used by the CIA to interrogate terror suspects in Afghanistan in 2003. This has deprived Mr. Passaro of the means to show that actual authority existed, using the theory of principal/agency law.

Third, this Court's conclusion that the evidence sought is not relevant, rests upon the government's unsupported factual assertion, of questionable veracity. The government initially maintained that "no CIA official had legal authority to authorize the acts for which Passaro has been charged." In a later hearing, the government repeatedly and emphatically denied that anyone in the CIA had authority to engage in the charged conduct. Later still, in a pleading filed January 12, 2006, the government apparently conceded that the CIA had the authority to employ interrogation methods that would otherwise constitute criminal assault. In essence the government's position changed to a claim that no one who supervised Mr. Passaro had the authority to empower him to commit the acts alleged. "While the government may choose to prosecute, it may not prosecute without telling the whole truth." *United States v. Wilson*, 289 F.Supp. 2d 801, 817 (S.D. Tex. 2003). Recent news reports show that the CIA may have misrepresented its interrogation conduct during Senate Intelligence Briefings by a senior official. Former Deputy Inspector General of the CIA Mary McCarthy, who had intimate knowledge of the CIA's interrogation authority "became convinced that CIA people had lied in that briefing." *See* R. Jeffrey Smith, *Fired Official*

*Believed CIA Lied to Congress*, Washington Post, May 14, 2006, col. A1.

Even if this Court accepts the government's claim that no one communicated permission for Mr. Passaro to engage in the charged misconduct, the absence of such communication is irrelevant to the public authority defense. In fact, this defense presumes that such communication did not occur, but that one reasonably relied on a mistaken belief of communicated permission. If permission had been actually communicated, the government would not charge a crime in the first place.

This information is critical to the defense, and the Court's order fails to provide the basis for determining that national security interests outweigh Mr. Passaro's right to present a meaningful defense. Mr. Passaro objects that this ruling denies his Constitutional rights, including due process, the right to present evidence, the right to compulsory process, the right to effective representation by counsel, the right to confront and cross-examine witnesses, and the right to a fair jury trial.

**Paragraphs 92 and 93.** Mr. Passaro does not object to an adequate substitution for this classified information, and proposes the following substitution: ▮

▮ The jury's determination of the reasonableness of Mr. Passaro's actions could well differ if the jury is misled into believing ▮

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ This information is critical to the defense, and the Court's order fails to provide the basis for determining that national security interests outweigh Mr. Passaro's right to present a meaningful defense. Mr. Passaro objects that this ruling denies his Constitutional rights, including due process, the right to present evidence, the right to compulsory process, the right to effective representation by counsel, the right to confront and cross-examine witnesses, and the right to a fair jury trial.

**Paragraph 94.** This summary of the evidence does not accurately substitute the classified information, in fact it is misleading. While the statement is true, it fails to point out that the ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Mr. Passaro raises the same objection to this paragraph as to paragraphs 92 and 93, above.

**Paragraphs 96 to 105.** This information is critical to the jury's determination of the reasonableness of Mr. Passaro's actions while with Wali, and the jury will be misled about the provocative nature, prior actions, and dangerous intentions of the alleged victim in this case, if his terrorist credentials are withheld. This information is critical to the defense, and the Court's order fails to provide the basis for determining that national security interests outweigh Mr. Passaro's right to present a meaningful defense. Mr. Passaro objects that this ruling denies his Constitutional rights, including due process, the right to present evidence, the right to compulsory process, the right to effective representation by counsel, the right to confront and cross-examine witnesses, and the right to a fair jury trial.

**Paragraphs 114 and 123.** Mr. Passaro objects to the substitution of the phrase ▇▇▇▇

████ and raises the same objections as in paragraph 17, above.

**Paragraph 216.** CIA and military personnel were very concerned about the reactions of the locals and the way Wali's death may affect relationships between the agencies and the two governments (U.S. and Afghan). Their concern over the possible reaction could have affected the statements gathered by the government during the time period shortly after Wali died. This information is therefore important to show bias and for the jury to consider when weighing witness credibility at trial. This information is critical to the defense, and the Court's order fails to provide the basis for determining that national security interests outweigh Mr. Passaro's right to present a meaningful defense. Mr. Passaro objects that this ruling denies his Constitutional rights, including due process, the right to present evidence, the right to compulsory process, the right to effective representation by counsel, the right to confront and cross-examine witnesses, and the right to a fair jury trial.

**Paragraphs 217-219.** Pages 110 through 114 of the transcript of the CIPA-6 hearing demonstrate that the government intends to have the jury conclude that Mr. Passaro likely caused Mr. Wali's death by the charged misconduct. Clearly the government will make Wali's health an issue in this case. The written order also contradicts this Court's statement during the hearing: "I'm not going to foreclose a history of the decedent having heart disease, if it can be admitted by appropriate evidence." Transcript at 114. This information is critical to the defense, and the Court's written order fails to provide the basis for determining that national security interests outweigh Mr. Passaro's right to present a meaningful defense. Mr. Passaro objects that this ruling denies his Constitutional rights,

including due process, the right to present evidence, the right to compulsory process, the right to effective representation by counsel, the right to confront and cross-examine witnesses, and the right to a fair jury trial.

**Paragraph 220.** Not only did "some U.S. personnel form a belief that (Wali) may have been behind the rocket attacks," as the government is willing to admit as relevant to this case, but ███████████████████████████████ If the Court allows this ruling to stand, at the end of the trial, the only people, American or Afghani, familiar with Wali and Asadabad, who won't know the truth about Wali, will be the jury. Mr. Passaro raises the same objections to this written ruling as he raised for paragraphs 92 and 93, above.

**Paragraphs 236, 237, 240-242, 244-250.** The fact that ███████████████ spoke directly with Major General Vines and exchanged messages with CIA headquarters in separate communication is material and necessary to show bias. Such information can help the jury to see if and why statements by people who appear independent from the other seem to corroborate each other. If the jury thinks the statements of military and CIA people tend to corroborate each other, the jury needs to know that all concerned were coordinating their statements because no one wanted to be blamed for Wali's death. This information is critical to the defense, and the Court's order fails to provide the basis for determining that national security interests outweigh Mr. Passaro's right to present a meaningful defense. Mr. Passaro objects that this ruling denies his Constitutional rights, including due process, the right to present evidence, the right to compulsory process, the right to effective

11

representation by counsel, the right to confront and cross-examine witnesses, and the right to a fair jury trial.

**Paragraph 261.** The fact that the director of the CIA approved a briefing of the United States Ambassador to Afghanistan is material to the government's interest in the outcome of the case. This is classic bias evidence and should be allowed for cross-examination of any government witnesses with knowledge of the communicated fact. This information is critical to the defense, and the Court's order fails to provide the basis for determining that national security interests outweigh Mr. Passaro's right to present a meaningful defense. Mr. Passaro objects that this ruling denies his Constitutional rights, including due process, the right to present evidence, the right to compulsory process, the right to effective representation by counsel, the right to confront and cross-examine witnesses, and the right to a fair jury trial.

**Paragraph 295.** Mr. Passaro raises the same objections to this as to paragraphs 236, *et al*, above. Also, pages 143-145 of the Transcript of the CIPA-6 hearing show that the Court has left this area open for cross-examination and may revisit the issue.

**Paragraphs 297-303.** Mr. Passaro raises the same objections to this as to paragraphs 236, *et al*, above.

**Footnote 7.** Defendant objects to any implication that he has not complied with the CIPA notification requirements. For example, on December 22, 2005, Mr. Passaro filed a Proffer in Support of Public Authority Defense, at the invitation of this Court. The facts proffered, of course, are intended for use at trial, and those proffered facts relate to the public authority

defense and are encompassed in paragraphs 66 to 77 of Defendant's CIPA 5 notice filed October 5, 2005. Moreover, due to the continuing duty to provide notice of intent to elicit classified information, the government received notice of the proffered facts, some of which it may conclude are classified, by hand-delivery on December 22, 2005.

## CONTINUING DUTY TO NOTIFY OF INTENT TO DISCLOSE CLASSIFIED INFORMATION

When the government fulfills its duty to provide information pursuant to Rule 16 of the Federal Rules of Criminal Procedure, due process, and the Jencks Act, such discovery may contain classified information. The defense will, as soon as practicable, provide the Court and government with notice of intent to disclose any such classified information, upon receipt of such information from the government.

Respectfully submitted this 10th day of July, 2006.

*[signature]*
JOSEPH B. GILBERT
Assistant Federal Public Defender
N.C. State Bar No. 21395

## *CERTIFICATE OF SERVICE*

I HEREBY CERTIFY that a copy of the foregoing was served upon:

JAMES A. CANDELMO
Assistant United States Attorney
Suite 800, Federal Building
310 New Bern Avenue
Raleigh, NC 27601-1461

by hand delivery to Jennifer Myers, United States District Court Clerk, for courier pick-up by the United States Attorney's Office, with a copy of the foregoing sent via secure facsimile to the Court Security Officer for classification review on,

This the 10th day of July, 2006.

_____
JOSEPH B. GILBERT
Assistant Federal Public Defender
N.C. State Bar No. 21395